**Helen J. WICKEY, Appellant–Plaintiff,**

v.

**Dawn SPARKS, Peru Community School Corporation, and Heartland Career Center, Appellee–Defendant.**

No. 52A02–9401–CV–4.

Court of Appeals of Indiana,
Second District.

Nov. 3, 1994.

Transfer Denied Feb. 24, 1995.

James H. Austen, Starr Austen & Tribbett, Logansport, for appellant.

Donald G. Fern, Fern Grund & Sands, Peru, for appellee, Dawn Sparks.

Alan D. Wilson, Fell, McGarvey, Trauring & Wilson, Kokomo, for appellee, Peru Community School Corp.

Tom F. Hirschauer, Hirschauer & Hirschauer, Logansport, for appellee, Heartland Career Center.

## OPINION

KIRSCH, Judge.

Appellant-plaintiff Helen J. Wickey appeals the entry of summary judgment in favor of appellee-defendants Peru Community School Corporation (Peru) and Heartland Career Center (Heartland). She contends that the trial court erroneously concluded that neither Peru nor Heartland owed her a duty of care. We affirm.

## FACTS

The facts most favorable to the non-movant Wickey establish that she was injured on November 7, 1989 when the car she was driving collided with a car driven by Victoria L. Hudson. Hudson was one of six Peru High School students who also attended cosmetology vocational classes at Heartland. Heartland was established through the cooperative effort of five area school corporations, including Peru, who contracted to provide vocational educational services. Hudson had completed her morning classes at Heartland and was driving to Peru High School to attend her afternoon classes when the accident occurred.

Although Peru provided all other vocational students with bus transportation to Heartland, it did not provide such transportation to the six cosmetology students because their classes began one hour earlier than the other vocational classes. Peru permitted the cosmetology students, subject to parental approval, to provide their own transportation to and from Heartland and issued driving passes to those cosmetology students who obtained parental permission. Heartland periodically checked to confirm whether the students possessed the necessary driving passes. On the date of the accident, Hudson had both her parents' written permission to provide her own transportation and a driving pass. She also had a valid Indiana driver's license.

At the time of the accident, both Peru and Heartland had student handbooks in effect. These handbooks required the students to drive in a safe manner and to comply with all traffic laws. Peru's handbook required the vocational students to return to Peru High

School by 12:10 p.m. Peru High School's assistant principal testified by deposition that the school staff "made sure [the students] always drove new [highway] 24 because it was safer." *Record* at 354. During the 1989 Fall semester and prior to the accident, reports were made to the assistant principal that the cosmetology students were engaging in driving horseplay. Neither Peru nor Heartland staff supervised the students' driving behavior to determine whether they followed the prescribed route or whether they complied with the handbook policies.

Wickey brought this negligence action against Peru and Heartland alleging they owed her a duty under the following theories: 1) they had a common law duty to supervise their students' driving behavior; 2) they gratuitously assumed a duty to supervise their students' driving behavior; and 3) the students were agents of Peru and Heartland, making Peru and Heartland vicariously liable for their students' negligence. The trial court granted summary judgment in favor of both Peru and Heartland, finding that neither defendant owed Wickey a duty of care.

## DISCUSSION AND DECISION

▉ When reviewing a decision on a summary judgment motion, this court applies the same standard as the trial court. *Selleck v. Westfield Ins. Co.* (1993), Ind.App., 617 N.E.2d 968, 970, *trans. denied.* Summary judgment shall be granted if the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Indiana Dep't of Pub. Welfare v. Murphy* (1993), Ind.App., 608 N.E.2d 1000, 1002. All facts and reasonable inferences must be construed against the moving party. *Indiana Bd. of Pub. Welfare v. Tioga Pines Living Center, Inc.* (1993), Ind., 622 N.E.2d 935, 940, *cert. denied* (1994), — U.S. —, 114 S.Ct. 1302, 127 L.Ed.2d 654. We will affirm a summary judgment ruling on any legal theory which is consistent with the designated evidence in the record. *Valley Fed. Sav. Bank v. Anderson* (1993), Ind.App., 612 N.E.2d 1099, 1102.

▉ The tort of negligence consists of three elements: 1) a duty owed to the plaintiff by the defendant; 2) a breach of that duty by the defendant; and, 3) injury to the plaintiff proximately caused by that breach. *J.A.W. v. Roberts* (1994), Ind.App., 627 N.E.2d 802, 808. The first element, the existence of a duty owed to the plaintiff, is usually a question of law for the court's resolution. *Klobuchar v. Purdue University* (1990), Ind.App., 553 N.E.2d 169, 171; *but cf. Brown v. Northern Indiana Pub. Serv. Co.* (1986), Ind.App., 496 N.E.2d 794, 797 (factual questions may be interwoven with legal determination of whether relationship exists to give rise to a legal duty), *trans. denied.* Although summary judgment is rarely appropriate in a negligence action, *Osmulski v. Becze* (1994), Ind.App., 638 N.E.2d 828, 838, it may be suitable to determine the legal question of whether a duty exists. *Brewster v. Rankins* (1992), Ind.App., 600 N.E.2d 154, 156. Absent a duty, there can be no breach, and thus, no basis for recovery under a negligence theory. *Hawn v. Padgett* (1992), Ind. App., 598 N.E.2d 630, 632.

## I. Duty to Supervise

Wickey first contends the common law imposes a duty upon both Peru and Heartland to supervise their students' driving behavior. In support of her contention, Wickey relies upon *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701, in which our supreme court stated:

"The specific and initial question of law presented, therefore, is whether the law of this State recognizes a duty for school authorities to exercise reasonable care and supervision for the safety of the children under their control. We believe that schools have such a responsibility and that the relationship of school pupils and school authorities should call into play the well recognized duty in tort law that persons entrusted with children, or others whose characteristics make it likely that they may do somewhat unreasonable things, have a special responsibility recognized by the common law to supervise their

charges. Restatement Torts 2d § 320; Prosser, Torts § 33, p. 172 (4th ed. 1971)." *Id.*, 261 Ind. at 611, 308 N.E.2d at 706.

The duty articulated in *Miller* arose out of the relationship between a student and school personnel. *See Norman v. Turkey Run Community School Corp.* (1980), 274 Ind. 310, 314, 411 N.E.2d 614, 616. The duty was found owing by the school to the injured student, not to a third party, and all of the cases which discuss the existence and extent of a school's duty after *Miller* have involved actions brought by or on behalf of an injured student. *See, e.g., Beckett v. Clinton Prairie School Corp.* (1987), Ind., 504 N.E.2d 552; *Norman*, 274 Ind. 310, 411 N.E.2d 614; *Drake v. Mitchell Community Schools* (1994), Ind.App., 628 N.E.2d 1231; *Klobuchar*, 553 N.E.2d 169; *Swanson v. Wabash College* (1987), Ind.App., 504 N.E.2d 327; *Dibortolo v. Metropolitan School Dist. of Washington Township* (1982), Ind.App., 440 N.E.2d 506; *School City of Gary v. Claudio* (1980), Ind.App., 413 N.E.2d 628.

This court was first presented with an appeal involving a non-student third-party's legal action against a school in *Brewster v. Rankins* (1992), Ind.App., 600 N.E.2d 154. There, a golf instructor allowed a fourth-grade student (Jason) to take a golf club home for the weekend to practice his skills. While practicing, Jason struck a three-year-old boy (Robert) in the head with the golf club. Jason's mother was baby-sitting Robert when the accident occurred. In resolving the duty issue, we held that:

> "Teacher and School owed Robert no duty when the accident occurred because the accident occurred off of School property and, although Teacher and School acquiesced in the golf club's use, the activity was not supervised by School or its officials; and, furnishing Jason the golf club would not effect a duty even if control or supervision were established because a golf club is not an inherently dangerous instrumentality."

*Id.* at 158.

■■ Our holding in *Brewster* was based upon the factual similarities between that case and *Swanson*, 504 N.E.2d 327, which focused upon the type and location of the activity which resulted in the accident. Neither case decided the question presented by the facts of this case: whether the duty to supervise, owed by a school to its students, extends to third parties. In determining whether such a duty to third parties exists, we must balance three competing factors: 1) the relationship between the parties; 2) the reasonable foreseeability of harm to the injured party; and, 3) public policy concerns. *See Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995; *J.A.W.*, 627 N.E.2d at 809.

### A. Relationship Between the Parties

■■ A school's duty to supervise students arises from the legal relationship between school pupils and school authorities. *Miller*, 261 Ind. at 611, 308 N.E.2d at 706. Here, no such relationship exists between Wickey and either Peru or Heartland. Wickey and the two schools are strangers in that Wickey is merely a member of the general public with no connection to either school. Thus, this factor weighs against imposing a duty on Peru and Heartland.

Wickey argues that the existence of a duty on the part of Peru and Heartland presents a mixed question of law and fact for which summary judgment is inappropriate. She bases her contention on the premise that "a factual question may be interwoven with the determination of the existence of a relationship." *Brown*, 496 N.E.2d at 797 (quoting *Clyde E. Williams & Associates, Inc. v. Boatman* (1978), 176 Ind.App. 430, 375 N.E.2d 1138).

*Brown* is readily distinguishable from the case before us. The plaintiff in that case was a construction worker who was injured when a piece of equipment came into contact with an uninsulated high voltage wire located over the plaintiff's employer's property. In finding questions of fact precluded summary judgment on the duty issue, this court specifically noted that "[t]here is no question that in this instance Brown was not a member of the general public.... He was on the totally fenced, private property of his employer—an area to which the general public had no access." *Brown*, 496 N.E.2d at 797. In the present case, Wickey was a member of the

general public driving on a highway to which any member of the general public had access. There is no factual question interwoven with the legal determination of whether a relationship existed between Wickey and the two schools.

## B. Foreseeability of Harm

 Analyzing the foreseeability component of duty involves two considerations: whether the injured person was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable. *Webb*, 575 N.E.2d at 997. In this regard, we must "examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct." *Id.* (citing Harper, James & Gray, *The Law of Torts*, Vol. 3 § 18.2 (2d ed. 1986)).

We are guided in our efforts by the well-reasoned opinion of the New York Supreme Court in *Thompson v. Ange* (1981), 83 A.D.2d 193, 443 N.Y.S.2d 918. In that case, the plaintiffs were injured in a multi-car accident caused by a vocational student (Graziano) who was driving his car on a public highway during school hours, a violation of school rules. Summary judgment in favor of the school authorities was affirmed because the authorities owed no duty to plaintiffs in the manner in which they supervised and enforced their rules governing student's driving to the vocational school. *Id.*, 443 N.Y.S.2d at 919.

At the time of the accident in *Thompson,* school rules required the vocational students to ride a bus to their vocational classes unless the students had a parking permit and written parental permission to drive their own car. *Id.*, 443 N.Y.S.2d at 920. The plaintiffs, like Wickey, argued that the school authorities adopted these rules because they perceived that student driving posed a risk to the public, and, accordingly, the authorities had a duty to supervise their students and enforce the rules. While the court deemed it reasonable to find that the school authorities negligently enforced their rules, this did not justify the imposition of liability absent a duty owed to the plaintiff. *Id.* The court explained:

"The uncontroverted proof was that Graziano was a licensed driver. The schools' awareness of reckless driving by some students and their concern for student safety is not sufficient to show that Graziano was anything but the average 17–year old whom the Legislature has determined may be licensed to driver [sic]. There is no claim that the schools had notice that Graziano was an incompetent driver. The risk that Graziano would be involved in an automobile accident was no greater than the risk incurred by the operation of an automobile by any average 17–year old driver. Violation of the no-driving rule did not increase the risk of accident in any way; that risk existed regardless of any rule."

*Id.*, 443 N.Y.S.2d at 921.

And so it is here. The fact that Hudson was driving between Heartland and Peru High School during school hours when this accident occurred did not create a foreseeable risk to Wickey any more than if Hudson, or any other licensed driver, had been driving on the public highway at any other time for any other reason. While the facts most favorable to Wickey show that Peru and Heartland knew that vocational students had previously engaged in horseplay while driving between the two schools, there is no evidence to indicate that Hudson participated in such horseplay, or that she was otherwise an unsafe driver. Thus, the absence of foreseeability of harm to Wickey weighs against imposing a duty on Heartland and Peru.

## C. Public Policy Concerns

The final factor to be balanced in determining the existence of a duty is the question of public policy concerns. In *Miller,* our supreme court stated: "It should be emphasized ... that schools are not intended to be insurers of the safety of their pupils, nor are they strictly liable for any injuries that may occur to them." *Miller,* 261 Ind. at 612, 308 N.E.2d at 706. We have found that school authorities should not be liable for injuries caused by their students' negligent acts which occurred off of school premises. *See Brewster,* 600 N.E.2d at 158; *Swanson,* 504

N.E.2d at 331.[1] Finally, we note, as did the New York Supreme Court, that: "It would be extending the legal consequences of wrongs beyond a controllable degree to hold that the use of an automobile by a licensed operator under these circumstances constitutes an unreasonable risk to others for which these schools may be liable." *Thompson*, 443 N.Y.S.2d at 921.

We conclude that the three components of duty—the parties' relationship, the foreseeability of harm, and public policy concerns—all dictate against imposing a common law duty on Peru and Heartland under the circumstances of this case.

## II. Assumption of Duty

■ In the absence of a duty imposed by law, Wickey contends that Peru and Heartland "clearly assumed the parental duty to supervise the driving behavior of their students." *Appellant's Brief* at 14. Wickey claims that Peru and Heartland gratuitously assumed this "parental duty" by adopting driving policies in their student handbooks and by prescribing the route of travel for their cosmetology students driving between the two schools.

To be found liable, Peru and Heartland must have undertaken to perform a duty to supervise Hudson's driving behavior owed to Wickey by Hudson's parents. *See Lather v. Berg* (1988), Ind.App., 519 N.E.2d 755, 766 ("An actor is liable for his negligent performance if he has undertaken to perform a legal duty owed by the other to the third person *on behalf of* and *in lieu of* that other.") (emphasis in original). Thus, Peru and Heartland cannot be liable under a gratuitous assumption of duty theory unless Wickey can first establish that Hudson's parents owed her a duty to supervise their daughter's driving behavior. If Wickey cannot establish Hudson's parents owed her such a duty, then Peru and Heartland cannot be liable because they could not have assumed a nonexistent duty.

Wickey asserts that the duty imposed on Hudson's parents was articulated in *Stewart*

*v. Swartz* (1914), 57 Ind.App. 249, 106 N.E. 719, which, according to Wickey, requires parents "to supervise their children so as to prevent their children from causing harm to others." *Appellant's Brief* at 14. In that case, the plaintiff was injured when he collided with a rope which the defendant's children stretched across a public highway. The duty found to exist there arose because the defendant had knowledge of and consented to the children's actions. Liability arose not from the parent/child relationship, but because the defendant himself was negligent in knowingly allowing those under his care, custody and control to place the rope across the highway. *Stewart*, 57 Ind.App. at 251; 106 N.E. at 720.

There is no similar knowledge or consent in the present case. The designated evidentiary matter does not establish that Hudson was an incompetent or otherwise dangerous driver. Furthermore, even if the evidence did establish Hudson's lack of driving ability, there is no designated evidence to show that her parents knew of her inability yet consented to let her drive. In fact, the designated evidence establishes that Hudson had a valid driver's license issued by the State of Indiana. In this context, therefore, there was no "parental duty" to supervise Hudson's driving behavior. Accordingly, Peru and Heartland cannot be charged with gratuitously assuming a nonexistent duty.

## III. Vicarious Liability

■ Finally, Wickey argues that Peru and Heartland had a statutory duty to provide transportation to all vocational students, *see* IC 20–9.1–2–1 and –2 (1988 Ed.), and that the schools delegated said duty to Hudson and the rest of the cosmetology students. By so doing, the schools created an agency relationship with the cosmetology students, and thus, are vicariously liable for the students' negligence.

We need not decide whether IC 20–9.1–2–1 and –2 create a duty to provide transportation. Even if they do, there was no agency relationship between the schools and Hudson. In *Swanson*, 504 N.E.2d 327, this Court considered the issue of whether a stu-

---

1. The parties devote considerable attention to the fact that this accident occurred off of school property. This factor is not determinative of the duty issue, but is merely one of the circumstances to be weighed in the *Webb* balancing test.

dent was acting as an agent for Wabash College. We stated:

"Agency is a relationship resulting from the manifestation of consent by one party to another that the latter will act as an agent for the former. In addition, the agent must acquiesce to the arrangement and be subject to the principal's control. An apparent agency is also initiated by a manifestation of the principal. However, the necessary manifestation is one made by the principal to a third party who in turn is instilled with a reasonable belief that another individual is an agent of the principal. It is essential that there be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party. Statements or manifestations made by the agent are not sufficient to create an apparent agency relationship."

*Id.* at 331–32 (citations omitted). Based upon the foregoing principles, we held that no agency relationship existed between the student and the college because there was no evidence of "the necessary elements of manifestation of a relationship, consent, and control." *Id.* at 332.

Evidence of the necessary elements of an agency relationship is similarly lacking here. The designated evidentiary matter does not show any manifestation on the part of either Peru or Heartland that Hudson was acting as their agent. There is no evidence of an actual agency relationship. There is also no evidence of an implied or apparent agency relationship between Hudson and the schools because neither school ever made any communication to Wickey that Hudson was acting as their agent.

Wickey attempts to distinguish *Swanson* on the ground that it addressed only the presence of an apparent agency relationship. Wickey's portrayal of *Swanson* is incorrect because we also considered whether an actual agency relationship existed. *See* 504 N.E.2d at 332.

Wickey's final contention that an agency relationship arose when Hudson agreed to drive subject to Peru's control is not supported by the designated evidence. Although Hudson may have agreed to the driving arrangement, there is no evidence to show that she acquiesced in any type of control over her driving by either Peru or Heartland.

Affirmed.

FRIEDLANDER and RUCKER, JJ., concur.