Dianna M. SIZEMORE and Gilbert Sizemore, Appellants–Plaintiffs,

v.

Anthony ARNOLD, M.D.,
Appellee–Defendant.

No. 49A02–9410–CV–618.

Court of Appeals of Indiana,
Second District.

March 20, 1995.

Rehearing Denied May 22, 1995.

Jon R. Pactor, Indianapolis, for appellant.

Kevin Charles Murray, Locke Reynolds Boyd & Weisell, Indianapolis, for appellee.

OPINION

KIRSCH, Judge.

Dianna and Gilbert Sizemore appeal the trial court's entry of summary judgment that the Sizemores' bankruptcy divested them of standing to bring a medical malpractice action against Dr. Anthony Arnold. We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the Sizemores show that in April 1991, Dianna injured her ankle at work. Dr. Arnold operated on the ankle on May 23, 1991. During that surgery, Dr. Arnold cut Dianna's sural nerve, requiring additional surgery and resulting in a permanent disability.

On July 3, 1991, about six weeks after Dianna's surgery, the Sizemores filed a bankruptcy petition; their discharge was entered October 25, 1991. The potential malpractice claim against Dr. Arnold was not listed as an asset of the bankruptcy estate.

About a year after the discharge, the Sizemores filed a proposed malpractice complaint against Dr. Arnold with the Indiana Department of Insurance. Pursuant to IC 27–12–11–1, Dr. Arnold filed a copy of the Sizemores' proposed malpractice complaint with the Circuit Court of Marion County, and moved for summary judgment, contending that the Sizemores lacked standing to bring a malpractice claim against him because the claim was the property of the bankruptcy estate. The trial court granted Dr. Arnold's motion and the Sizemores appeal.

## DISCUSSION AND DECISION

 The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *Liberty Mutual Ins. Co. v. Metzler* (1992), Ind.App., 586 N.E.2d 897, 899, *trans. denied.* In reviewing a grant of summary judgment, we apply the same standard as did the trial court in entering it. *Id.* at 900. That is, summary judgment shall be granted if the designated evidence shows that "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of

law." Ind.Trial Rule 56(C); *Wickey v. Sparks* (1994), Ind.App., 642 N.E.2d 262, 265. A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on a dispositive issue. *Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313, 318. Construing all facts and reasonable inferences against the moving party, we will affirm a summary judgment on any legal theory which is consistent with the designated evidence in the record. *Wickey*, 642 N.E.2d at 265.

The cause of action on a medical malpractice claim accrues on the date the alleged negligent act occurs rather than when it is discovered. *See Bradley v. Stiller* (1992), Ind.App., 604 N.E.2d 1242, 1244, *trans. denied.* Because the Sizemores' malpractice claim against Dr. Arnold is based upon allegations of negligence in his performance of the May 23, 1991 operation, their cause of action accrued on that date. Thus, the malpractice claim was an interest which the Sizemores possessed when they filed their bankruptcy petition on July 3, 1991.

The Sizemores claim they did not learn of their potential malpractice claim against Dr. Arnold until November 1991, after their bankruptcy discharge, and argue that their failure to list the claim against Dr. Arnold as an asset in their bankruptcy was free of "the smallest taint of dishonesty, concealment, or even negligence....," that "[t]hey could not disclose in their bankruptcy petitions that they had a medical malpractice claim when they did not know it and when they should not have known it [ ]," and "[b]ecause the Sizemores did not 'conceal' their claim from their creditors or the bankruptcy court, they should be allowed to pursue their malpractice action against Dr. Arnold." *Appellants'*

*Brief* at 9. The Sizemores' innocence or guilt in omitting the potential claim is immaterial: They are prohibited from recovering on their own behalf because the malpractice claim against Dr. Arnold belongs not to them but to their bankruptcy estate, in trust for their creditors.

A bankruptcy estate consists of all the legal or equitable interests in property the debtor possesses when the bankruptcy petition is filed. 11 U.S.C. § 541(a); *Schlosser v. Bank of Western Indiana* (1992), Ind.App., 589 N.E.2d 1176, 1179. Any potential lawsuit the Sizemores owned when they filed for bankruptcy, including their malpractice claim against Dr. Arnold, was an interest included in that estate. Only the bankruptcy trustee would have standing to bring suit upon the claim; the Sizemores lack standing to do so. *Bradley*, 604 N.E.2d at 1244.[1]

To allow the Sizemores to bring this action in their own name would allow them to take advantage of the discharge effect of the bankruptcy upon their debts and yet retain prebankruptcy assets, a combination which is unfair to the Sizemores' creditors.[2] Whether deliberately concealed or honestly undiscovered, the ˜Sizemores' nonexempt prebankruptcy assets are the property of the estate and not of the bankrupts.

Affirmed.

FRIEDLANDER and NAJAM, JJ., concur.

---

1. Upon discovery of their malpractice claim, the Sizemores could have notified the bankruptcy court of the newly discovered asset. The court could then have reopened the estate under Fed. R.Bankr.P. 5010 to allow the bankruptcy trustee to either prosecute the claim against Dr. Arnold on the estate's behalf or abandon the claim to the Sizemores pursuant to 11 U.S.C. § 554.

2. Appellee characterizes this as the Sizemores' attempt to "have their cake and eat it too."

*Appellee's Brief* at 7, 14, 17. But as Professor Follett has explained:

"To eat one's cake and have it too, a proverbial statement of the human greed for irreconcilable benefits, turns up in print and talk with the order illogically reversed. * * * It is of course no trick at all to eat the cake that you have. The point of the saying is to have the cake after you have eaten it."

Wilson Follett et al, *Modern American Usage* 96 (1966).