**Elmer CRIST and Patsy Crist, Appellants–Plaintiffs,**

v.

**K–MART CORPORATION, Appellee–Defendant.**

No. 09A02–9412–CV–742.

Court of Appeals of Indiana.

July 24, 1995.

Rehearing Denied Sept. 12, 1995.

---

Robert Leirer Justice, Logansport, for appellant.

Lynne D. Lidke, Robert L. Browning, Scopelitis, Garvin, Light & Hanson, Indianapolis, for appellee.

## OPINION

KIRSCH, Judge.

Elmer and Patsy Crist brought product liability and negligence claims against K–Mart Corporation for injuries Elmer suffered while delivering K–Mart merchandise. The trial court granted summary judgment to K–Mart on the product liability claims, and entered judgment for K–Mart following a bench trial on the negligence claims. The Crists appeal, raising the following issues:

I.   Whether Crist was a user or consumer within the meaning of Indiana's Product Liability Act.

II.   Whether K–Mart owed Crist a duty to protect him from harm.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Elmer Crist is a truck driver who was employed by Hi–Way Dispatch, Inc. Hi–Way is an independent trucking company hired by K–Mart to transport K–Mart's merchandise from its distribution centers to its

retail stores. Crist was assigned to transport K–Mart merchandise in a Hi–Way tractor-trailer from a distribution center in Ohio to various retail stores in West Virginia and Virginia. K–Mart's employees loaded the trailer at the distribution center and sealed it prior to transferring it to Crist for transportation to the retail stores. K–Mart employees would then break the seal when Crist arrived at a retail store. Once the seal was broken, Crist would unload the trailer. Hi–Way paid Crist additional compensation for the unloading.

On April 23, 1991, Crist was injured while unloading K–Mart's merchandise at one of the retail stores. Crist was standing on a box inside the trailer, attempting to reach another box located at the top of a stack, when the box upon which Crist was standing collapsed. Crist fell to the floor of the trailer and sustained injury.

The trial court granted K–Mart partial summary judgment on the Crist's product liability claims, finding that Crist was not a "user or consumer" as that term is defined in Indiana's Product Liability Act (the Act), and that K–Mart was entitled to judgment as a matter of law. Following a bench trial on the negligence claims, the court entered judgment in K–Mart's favor with specific findings of fact and conclusions of law.

## DISCUSSION AND DECISION

### I. PRODUCT LIABILITY

Crist argues that the trial court erred by determining that he was not a user or consumer of the box. The Act defines "user or consumer" as:

"[A] purchaser, any individual who uses or consumes the product, or any other person who, while acting for or on behalf of the injured party, was in possession and control of the product in question, or any bystander injured by the product who would reasonably be expected to be in the vicinity of the product during its reasonably expected use."

IC 33–1–1.5–2 (1988 Ed.). The trial court determined that this definition, as interpreted in *Thiele v. Faygo Beverage, Inc.* (1986), Ind.App., 489 N.E.2d 562, *trans. denied,* warranted a summary judgment in K–Mart's favor.

■■■ When reviewing a decision on a summary judgment motion, this court applies the same standard as the trial court. *Selleck v. Westfield Ins. Co.* (1993), Ind.App., 617 N.E.2d 968, 970, *trans. denied.* Summary judgment shall be granted if the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Indiana Dep't of Pub. Welfare v. Murphy* (1993), Ind.App., 608 N.E.2d 1000, 1002. All facts and reasonable inferences must be construed against the moving party. *Sizemore v. Arnold* (1995), Ind.App., 647 N.E.2d 697, 699. We will affirm a summary judgment ruling on any legal theory which is consistent with the designated evidence in the record. *Wickey v. Sparks* (1994), Ind. App., 642 N.E.2d 262, 265, *trans. denied.*

In *Thiele,* the plaintiff, a Kroger employee, was injured while handling a case of Faygo soda pop. As Thiele was lifting the case, a piece of glass flew up and struck his eye. Thiele sued Faygo on a product liability theory, alleging that the design of the soda pop case, a cardboard box open on the top with plastic wrapped around it, was defective because it created a "trampoline effect" which caused the glass to fly off the plastic into Thiele's eye.

In affirming the entry of summary judgment in Faygo's favor, this court held that Thiele was not a "user or consumer" within the meaning of the Act. We determined that as a " 'middle man' employee at the distribution level of his employer's business who handled Faygo's product as it flowed through the stream of commerce toward the retail purchaser[,]" *id.,* 489 N.E.2d at 585, Thiele was not within the class of plaintiffs intended to be protected by the Act. *Id.* at 588. Rather, "[i]t appears the legislature intended 'user or consumer' to characterize those who might foreseeably be harmed by a product *at or after* the point of its retail sale or equivalent transaction with a member of the consuming public." *Id.* at 586 (emphasis in original; footnote omitted). Ultimately, we determined that "our legislature has required a

'sale' to a 'first consuming entity' before the protection afforded by the Act is triggered[.]" *Id.* at 588.

Crist suggests that we revisit the analysis developed in *Thiele*. Indeed, as K–Mart conceded in oral argument, the principles espoused in *Thiele* are overly broad. Even the author of *Thiele*, Judge Miller, recognized the difficulty inherent in the result reached in that case when he discussed the amendment adding bystanders to the Act,[1] stating:

"We note that the rationale behind extending the protection of strict liability theory to bystanders seems equally applicable to the employees of those entities in the distributive chain preceding the sale of a product to the 'first consuming entity.' Such an employee and such bystander are both foreseeably subject to harm caused by a defective product; neither is able to protect himself from such harm by choosing to deal with only reputably safe products. Thus, it would seem that a person in Robert Thiele's position in the chain of distribution of a product from manufacturer to consuming entity is as deserving of the protection of our Product Liability Act as any bystander."

*Id.* While we believe that the same logical inconsistency continues to exist, we need not resolve it here because there is an alternative basis for affirming the summary judgment in favor of K–Mart. *See Wickey*, 642 N.E.2d at 265 (summary judgment ruling may be affirmed on any legal theory which is consistent with the designated evidence in the record).

The alternative basis is that K–Mart was not a seller of the boxes. K–Mart asserts that, if anything, it is an "occasional seller" of the boxes and is not engaged in the business of selling the boxes as the Act requires.[2] The Act defines a seller as "a person engaged in business as a manufacturer, a wholesaler, a retail dealer, a lessor, or a distributor." IC 33–1–1.5–2 (1988 Ed.). In *Lucas v. Dorsey Corp.* (1993), Ind.App., 609 N.E.2d 1191, *trans. denied*, we considered the question of who qualifies as a seller within the meaning of the Act. As stated in *Lucas:*

"The Products Liability Statute applies to a seller of a defective product provided the seller is 'engaged in the business of selling such a product.' *See* IND.CODE § 33–1–1.5–3(a)(1). However, the occasional seller who is not engaged in that activity as part of his business is not liable in products liability. *Perfection Paint [& Color Co.] v. Konduris* [1970], 147 Ind.App. 106, 117, 258 N.E.2d 681, 686."

*Id.*, 609 N.E.2d at 1202.

In support of its summary judgment motion, K–Mart designated the affidavit of its transportation manager, Joseph Lody. Mr. Lody averred that the trailer Crist was transporting was loaded at the distribution center with boxes containing K–Mart products. He stated that "The *boxes* were not for sale, either on a wholesale or retail basis; rather, it was the *products* within the boxes that were to be sold." *Record* at 35 (emphasis in original). Further, Mr. Lody stated that K–Mart was not in the business of selling the boxes; instead, it was in the business of selling the products contained in those boxes.

Mr. Lody's affidavit was sufficient to satisfy K–Mart's burden, as the moving party, of demonstrating "the absence of any genuine issue of fact as to a determinative issue[.]" *Jarboe v. Landmark Community Newspapers of Indiana, Inc.* (1994), Ind., 644 N.E.2d 118, 123. *See also Green v. Whiteco Industr., Inc.* (7th Cir.1994), 17 F.3d 199 (affidavit stating defendant was not a manufacturer, retailer or wholesaler of sound systems, but was in the business of outdoor

---

1. Thiele was injured prior to a 1983 amendment to the Act which added bystanders to the class of users or consumers entitled to recover under the Act. 489 N.E.2d at 588. While Crist is subject to the amended definition, he was not a bystander. Thus, the amendment to the Act does not alter our analysis.

2. Crist claims it is impermissible for us to consider K–Mart's theory that it is not a seller because K–Mart originally pursued this theory but was unsuccessful in the trial court. We are not precluded from considering K–Mart's status as a seller because we may affirm a summary judgment on any theory supported by the evidence designated to the trial court. *Wickey*, 642 N.E.2d at 265.

advertising and ownership of hotels, restaurants, and entertainment centers, was sufficient in summary judgment proceedings to establish the absence of any credible evidence that defendant was a seller under Indiana's Product Liability Act). In other words, K–Mart established the absence of any genuine issue of fact as to whether it was a seller of the boxes.

■ It was then Crist's burden, as the non-moving party, to come forward with contrary evidence. *Jarboe*, 644 N.E.2d at 123. Crist failed in this burden. He asserted that a genuine issue of material fact existed as to whether K–Mart was a seller of the boxes because it would sell certain products in the original box, such as a case containing several cans of motor oil. K–Mart would also gratuitously provide boxes upon its customers' request for their use in transporting goods they had purchased. These types of sporadic and isolated dealings do not constitute the type of regular business activity necessary to classify K–Mart as a seller of boxes. *See Keen v. Dominick's Finer Foods, Inc.* (1977), 49 Ill.App.3d 480, 7 Ill.Dec. 341, 364 N.E.2d 502 (grocery store who gratuitously provided shopping carts to its customers was not engaged in the business of selling shopping carts). *See generally* Donald M. Zupanec, Annotation, *When is Person 'Engaged in the Business' for Purposes of Doctrine of Strict Tort Liability*, 99 A.L.R.3d 671 (1980).

Crist also contends that K–Mart is a seller because it manufactured the boxes. Crist claims K–Mart's manufacturing activities consisted of assembling the boxes from flat, preformed cardboard provided by suppliers and placing K–Mart's name on the boxes. These boxes are known as "re-pack" boxes because various items of K–Mart merchandise are re-packed into these larger boxes for transportation to the retail stores. K–Mart merchandise was also transported in "case pack" boxes, so named because they contain K–Mart brand merchandise such as motor oil or detergent. Crist did not save the box from which he fell and did not present evidence at any stage of the trial court proceedings to establish whether the box was a re-pack box or a case pack box. Furthermore, Crist asserted in oral argument that the nature of the defect in the box, whether arising from design or manufacture, is immaterial because "It was K–Mart's box."[3]

■ For the first time in his reply brief, Crist asserts that K–Mart is a seller because it bailed the boxes to Crist. New arguments made in a reply brief are inappropriate and will not be considered on appeal. *Osmulski v. Becze* (1994), Ind.App., 638 N.E.2d 828, 836 n. 9.

■ Even if K–Mart is classified as a seller it still is not subject to liability under the Act. The Act provides that "[i]f an injury results from handling, preparation for use, or consumption that is not reasonably expectable, the seller is not liable under this chapter." IC 33–1–1.5–2.5(c) (1988 Ed.). The box's purpose was for the storage of retail merchandise and for ease in handling the merchandise as it made its way through the stream of commerce. The purpose of the box was not to serve as Crist's ladder during unloading. Such use was not reasonably expectable; K–Mart cannot be liable.

## II. NEGLIGENCE

■ The Crists' negligence claims were tried to the bench. In rendering judgment for K–Mart, the court entered findings of fact and conclusions of law at K–Mart's request. When a party makes such a request, "the reviewing court cannot affirm the judgment on any legal basis; rather, this court must determine whether the trial court's findings are sufficient to support the judgment." *McDonald v. McDonald* (1994), Ind. App., 631 N.E.2d 522, 523. When reviewing the trial court's judgment, we employ a two-tiered standard: first, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Head v. Commissioner, Indiana Dep't of Envtl. Management* (1993), Ind.App., 626 N.E.2d 518, 524, *trans. denied.*

---

**3.** In addition to classifying the defendant as a seller, a product liability claim must also establish the existence of a defective product. *See* IC 33–1–1.5–3 (1988 Ed.); *Stump v. Indiana Equip-* *ment Co.* (1992), Ind.App., 601 N.E.2d 398, 401, *trans. denied.* The parties did not designate any evidence to the trial court addressing the defect issue.

"[T]he court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." T.R. 52(A). A judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions of law entered on the findings. *Head*, 626 N.E.2d at 524. Findings of fact are clearly erroneous "when the record lacks any evidence or reasonable inferences from the evidence to support them." *Id.*

One of Crist's theories for recovery is premises liability, i.e., K–Mart, as a "landowner," owed him, as an invitee, a duty to provide reasonably safe premises. The parties do not make an issue of whether the trailer constitutes a "premise" for purposes of determining any potential liability on K–Mart's part, *see Duffy v. Ben Dee, Inc.*, (1995), Ind.App., 651 N.E.2d 320 (premises liability principles not applicable to injuries occurring on bulldozer); nor do they dispute Crist's invitee status while working in the trailer. *See Burrell v. Meads* (1991), Ind., 569 N.E.2d 637, 639 ("the entrant's status on the land determines the duty that the landowner (or occupier) owes to him."); *Louisville Cement Co. v. Mumaw* (1983), Ind.App., 448 N.E.2d 1219, 1221 (employees of an independent contractor are invitees). Rather, the parties' dispute centers around the nature and extent of K–Mart's control over the trailer and its contents.

The issue of control is important in this context because:

"In premises liability cases, we must determine who controlled the property upon which the injury occurred, because 'the thread through the law imposing liability upon occupancy of premises is control.' *Great Atlantic & Pacific Tea Co. v. Wilson* (1980), Ind.App., 408 N.E.2d 144, 150. The reasons the law imposes liability on the person who controls the property is [sic] self-evident: only the party who controls the land can remedy the hazardous conditions which exist upon it and only the party who controls the land has the right to prevent others from coming onto it. Thus, the party in control of the land has the exclusive ability to prevent injury from occurring."

*City of Bloomington v. Kuruzovich* (1987), Ind.App., 517 N.E.2d 408, 411, *trans. denied.*

In most premises liability cases, the owner and the possessor of the property are the same person or entity, so that there is no question as to who is responsible for the safe maintenance of the premises. *See* Joseph A. Page, *The Law of Premises Liability* 3 (2d ed.1988). Here, however, Hi–Way, not K–Mart, owned the trailer. Thus, the dispositive question is whether K–Mart exercised sufficient control over the trailer so as to be deemed the possessor. If K–Mart had control over the trailer, then it owes a duty to its invitees to exercise reasonable care for their protection while they are on the premises. *Burrell*, 569 N.E.2d at 639. If K–Mart had no control over the trailer, it owed Crist no duty.

In determining whether an entity is a possessor of land in the premises liability context, our supreme court has adopted the following definition:

"A possessor of land is

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of [the] land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b)."

*Risk v. Schilling* (1991), Ind., 569 N.E.2d 646, 647 (quoting *Restatement (Second) of Torts* § 328E (1965)). Based upon this definition, one commentator has described possession as "a question of fact involving occupation and intent to control the particular area where the injury occurred." Page, *supra* (footnote omitted).

The trial court made the following findings regarding K–Mart's control over the trailer: Hi–Way owned the trailer; Crist was exclusively responsible for unloading the trailer; and none of K–Mart's employees assisted, supervised or controlled Crist in the unloading process. The trial court then concluded

that K–Mart relinquished control over the interior of the trailer and its contents to Crist no later than when K–Mart employees broke the seal at the retail stores and turned the contents over for unloading.

The evidence supporting the trial court's findings regarding K–Mart's control over the trailer is Crist's testimony that Hi–Way owned the trailer. Crist also testified to his understanding that K–Mart employees were not permitted to enter the trailer, and, in fact, they did not enter the trailer on the day Crist's fall occurred. Crist explained that he was a Hi–Way employee, and that as such, he was exclusively responsible for unloading the trailer.

We find that this evidence supports the trial court's findings on the issue of control. We further find that the trial court's findings support its ultimate conclusion that K–Mart had no control over the trailer, and, thus, owed no duty to Crist. Accordingly, the trial court's judgment is not clearly erroneous.[4]

Crist also contends the trial court erroneously failed to apportion fault as required by Indiana's Comparative Fault Act. The Comparative Fault Act defines fault as "any act or omission that is negligent, willful, wanton, or reckless...." IC 34–4–33–2(a) (1988 Ed.). In the present case, K–Mart's "fault" is alleged to be negligence. Accordingly, Crist must prove: 1) a duty owed to him by K–Mart; 2) K–Mart's breach of that duty; and 3) injury to him proximately caused by K–Mart's breach. *See Wickey v. Sparks,* 642 N.E.2d at 265. Absent a duty, however, there can be no breach, and, thus, no basis for recovery under a negligence theory. *Id.* If there is no negligence, there is no fault, and apportionment is not possible.

Crist appears to advance an additional theory, claiming that K–Mart was negligent in the manner in which it loaded the boxes onto the trailer at the distribution center. This contention was argued as a part of Crist's premises liability theory at trial, and was resolved by the trial court on the duty issue. Although Crist asserted at oral argument that the contention was a sep-

arate theory of liability, a party may not present an argument for the first time on appeal. *Williams v. City of Indianapolis* (1990), Ind.App., 558 N.E.2d 884, 887, *trans. denied.* Furthermore, there is nothing in the trial record to establish that K–Mart was negligent in this manner.

Affirmed.

FRIEDLANDER and BAKER, JJ., concur.

---

4. Crist also asserts that a duty arose out of an alleged lease arrangement between K–Mart and Hi–Way. Crist's argument is without evidentiary foundation and is otherwise unpersuasive.