John D. **HAPNER**,[1] Appellant–Plaintiff,

v.

**STATE of Indiana, Indiana Department of Transportation, S.E. Johnson Companies, Inc., and C–Tech Corporation, Inc., Appellees–Defendants.**

No. 02A05–9712–CV–511.

Court of Appeals of Indiana.

Oct. 6, 1998.

---

1. This is a consolidated appeal in which John Hapner is the appellant in two issues and the appellee in another issue being appealed by S.E. Johnson Companies, Inc. For purposes of identifying the parties in this caption, they will be listed as they were when the case was initiated in the trial court and Hapner will be referred to as the appellant and S.E. Johnson Companies, Inc. will be referred to as one of the appellees.

Robert Owen Vegeler, John B. Bentz, Beers Mallers Backs & Salin, Fort Wayne, for Appellant–Plaintiff John Hapner.

Edward L. Murphy, Jr., Monica S. Weaver, Miller Carson Boxberger & Murphy LLP, Fort Wayne, for Appellee–Defendant S.E. Johnson Companies, Inc.

Mark E. Spitzer, Josef D. Musser, Browne Spitzer Herriman Stephenson Holderead & Musser, Marion, for Appellee–Defendant C–Tech Corporation, Inc.

Dane L. Tubergen, Jennifer D. Yoder, Hunt Suedhoff, LLP, Fort Wayne, for Appellees–Defendants State of Indiana, Indiana Department of Transportation.

## OPINION

KIRSCH, Judge.

This appeal arises out of a motor vehicle accident in which John D. Hapner struck two horizontal rails of a guardrail that contained no protective end covering. Hapner appeals the trial court's granting of summary judgment in favor of C–Tech Corporation, Inc. (C–Tech), and the trial court's granting of judgment on the pleadings in favor of the State of Indiana and the Indiana Department of Transportation (collectively "IDOT"). In addition, S.E. Johnson Companies, Inc. (S.E.Johnson) appeals the trial court's granting of summary judgment in favor of Hapner. The issues presented are:

I. Whether C–Tech, a subcontractor on a highway construction project, owed Hapner a duty of care.

II. Whether Hapner was contributorily negligent as a matter of law.

III. Whether IDOT, which was dismissed from the litigation through a judgment on the pleadings, may be named as a nonparty under Indiana's Comparative Fault Act.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On April 17, 1993, Hapner was driving his automobile on Washington Center Road in Allen County. He started to turn left onto State Road 3 when he momentarily turned his head to speak to his two children in the back seat. As he did so, his automobile veered slightly to the left and into the median of State Road 3. Hapner was unable to steer his automobile back onto the roadway and was injured when he collided with two

horizontal rails of a guardrail in the median. The horizontal rails did not contain any protective end covering and extended for approximately eight to ten feet before meeting the first support post. Hapner described the impact as the rails spearing or impaling his automobile.

At the time of Hapner's accident, a construction project was ongoing on the stretch of State Road 3 where Hapner was injured. IDOT was the construction project owner, and S.E. Johnson was the general contractor. C–Tech was S.E. Johnson's subcontractor responsible for removing and installing guardrail on the construction project. On June 1, 1992, pursuant to the instructions of IDOT's project engineer, C–Tech removed a portion of the guardrail at the site where the accident later occurred. IDOT decided that some of the guardrail should remain in place so as to divide opposing lanes of traffic. At the direction of IDOT, and with its approval, S.E. Johnson placed barricades at the site where the guardrail was removed. After C–Tech completed its work, IDOT inspected the site and approved it as being in a nonhazardous condition. C–Tech's work took one day, and S.E. Johnson paid C–Tech for its work soon thereafter. C–Tech performed no further work on the guardrail between June 1, 1992, and the date of Hapner's accident.

Hapner filed a complaint for damages against IDOT, S.E. Johnson, and C–Tech.[2] IDOT moved for judgment on the pleadings, claiming that Hapner's contributory negligence was a complete bar to his suit against it. C–Tech moved for summary judgment, claiming that, as a subcontractor, it did not owe Hapner a duty of care once its work was accepted by IDOT and S.E. Johnson. The trial court granted IDOT's and C–Tech's motions.

After IDOT was granted judgment on the pleadings, S.E. Johnson moved to amend its answer to name IDOT as a nonparty for purposes of fault allocation. Hapner filed a motion for summary judgment, claiming that IDOT was not a nonparty within the meaning of Indiana's Comparative Fault Act. The trial court granted Hapner's motion. On appeal, Hapner challenges the trial court's granting of IDOT's motion for judgment on the pleadings and C–Tech's motion for summary judgment. S.E. Johnson challenges the trial court's granting of Hapner's motion for summary judgment on the nonparty issue.

## DISCUSSION AND DECISION

### I. Summary Judgment for C–Tech

The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *Sizemore v. Arnold,* 647 N.E.2d 697, 698 (Ind.Ct.App.1995). When reviewing a decision on a summary judgment motion, this court applies the same standard as does the trial court. *Wickey v. Sparks,* 642 N.E.2d 262, 265 (Ind.Ct.App.1994), *trans. denied* (1995). Summary judgment shall be granted if the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Auler v. Van Natta,* 686 N.E.2d 172 (Ind.Ct.App.1997), *trans. denied.* In determining whether summary judgment is appropriate, all facts and reasonable inferences must be construed against the moving party. *Wickey,* 642 N.E.2d at 265.

Hapner's claim against C–Tech sounds in negligence. The tort of negligence consists of the following elements: 1) a duty owed to the plaintiff by the defendant; 2) a breach of that duty by the defendant; and 3) injury to the plaintiff proximately caused by that breach. *Id.* A defendant may obtain summary judgment in a negligence action by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim or that the claim is barred by an affirmative defense. *Goldsberry v. Grubbs,* 672 N.E.2d 475, 477 (Ind.Ct.App.1996).

The element C–Tech seeks to negate is duty. In response, Hapner first argues that a duty should be imposed on C–Tech based upon the three factors set forth in *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.

---

2. Hapner also sued another subcontractor which was granted summary judgment in the trial court and is not a party to this appeal.

1991). Hapner argues that the relationship between the parties, the foreseeability of harm, and public policy concerns all dictate the imposition of a duty on C–Tech to the motoring public to perform its work under the subcontract with S.E. Johnson "in a manner that would not put Hapner, or any other motorists, in danger of serious injury." *Appellant's Brief* at 13–14. We need not engage in the *Webb* analysis to determine whether a duty exists, however, because the duty inquiry "is governed by a line of decisions dealing specifically with contractors' liability to third parties for construction flaws." *Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 170 (Ind.1996). The general rule under such line of decisions is that a contractor does not owe a duty of care to third parties after the owner or general contractor accepts the independent contractor's work. *Id.; Daugherty v. Herzog*, 145 Ind. 255, 44 N.E. 457 (1896); *Snider v. Bob Heinlin Concrete Constr. Co.*, 506 N.E.2d 77, 81 (Ind.Ct. App.1987), *trans. denied.* An exception to this general rule exists for work that is "deemed dangerously defective, inherently dangerous or imminently dangerous such that it poses a risk of imminent personal injury to third parties." *Blake*, 674 N.E.2d at 170.

In an effort to avoid summary judgment, Hapner first argues that genuine issues of material fact exist as to whether IDOT or S.E. Johnson accepted C–Tech's work. Hapner further argues that even if IDOT or S.E. Johnson accepted the work, genuine issues of material fact exist as to whether C–Tech left the guardrail in an imminently dangerous condition which would bring C–Tech within the exception to the general rule.

Hapner relies on *Blake*, to support his arguments. There, an employee at a construction site was injured when he fell from a loading dock that had no guardrails. The subcontractor responsible for installing the loading dock was also responsible for installing the guardrails. *Id.* at 169. On the issue of the owner's acceptance of the contractor's work, the court set forth the following parameters:

"In evaluating 'acceptance' for these purposes, the focus is on whether the owner was better able than the contractor to prevent injury to third parties at the time the harm occurred. Factors informing the acceptance inquiry include whether: (1) the owner or its agent reasserted physical control over the premises or instrumentality; (2) the work was actually completed; (3) the owner expressly communicated an acceptance or release of liability; or (4) the owner's actions permit a reasonable inference that the work was accepted."

*Id.* at 171. The court held that the owner's payment to the subcontractor prior to the employee's accident was insufficient, standing alone, to establish acceptance as a matter of law, absent some other indication "that the owner was subjectively satisfied with the work, or had communicated satisfaction, assuming it existed, or had any intent to accept the loading dock without the guardrails, if in fact none had ever been installed." *Id.* The court further held that the existence of a factual dispute regarding whether the subcontractor had completed its work in accordance with the contract specifications, the dispute being whether the subcontractor had installed the guardrails but someone later removed them or whether the subcontractor had not installed the guardrails at all, created a genuine issue for trial regarding the owner's acceptance. *Id.* at 172.

In an effort to bring himself within the holdings of *Blake*, Hapner challenges the acceptance of C–Tech's work by arguing that genuine issues of material fact exist as to whether IDOT or S.E. Johnson reasserted physical control over the site where the guardrail was located, factor one in the acceptance analysis, and whether C–Tech actually completed the authorized work, factor two in the acceptance analysis. C–Tech correctly points out that Hapner did not designate either of these issues or any evidence in support thereof to the trial court. This court may not reverse a summary judgment based upon designations which first appear on appeal. Ind. Trial Rule 56(H); *Warner Trucking, Inc. v. Carolina Casualty Ins. Co.*, 686 N.E.2d 102, 105 n. 1 (Ind.1997).

Notwithstanding Hapner's procedural default, the evidence designated to the trial court establishes IDOT's and S.E. Johnson's reassertion of physical control over the site and C–Tech's completion of the work. It is

undisputed that S.E. Johnson paid C–Tech for the guardrail work soon after it was completed. Furthermore, before C–Tech left the work site, S.E. Johnson erected traffic barricades in order to delineate the traveled portion of the roadway. IDOT inspected the site and approved it as being in a nonhazardous condition. Unlike *Blake,* in which the completed status of the subcontractor's work was open to question, it is undisputed here that C–Tech completed the work it was asked to do and did such work to the satisfaction of the owner and general contractor. Also unlike *Blake,* in which the subcontractor stayed on the construction site to perform additional work, the construction project here continued on without C–Tech's participation or presence on the work site for the ten months between completion of C–Tech's work and Hapner's accident. IDOT's and S.E. Johnson's acceptance of C–Tech's work was established as a matter of law.

[redacted] Hapner further attempts to bring himself within the holdings of *Blake* by arguing that C–Tech falls within the exception to the general rule because it left the guardrail in an imminently dangerous condition. Even if C–Tech did leave the guardrail in an imminently dangerous condition, however, it still would not be liable to Hapner "merely for carrying out plans or directions, so long as the plans are not so obviously dangerous or defective that no reasonable contractor would follow them." *Id.* at 173 n. 9.[3]

C–Tech was directed to remove the guardrail so that another subcontractor could install a concrete sign foundation pursuant to the specifications of IDOT and S.E. Johnson. IDOT made a conscious decision to remove only a portion of the guardrail so that some of the guardrail would remain to divide opposing lanes of traffic on State Road 3. After C–Tech removed a portion of the guardrail, S.E. Johnson placed traffic drums "to delineate the obstruction" at the direction of IDOT's project engineer. *Record* at 141. The directions given to C–Tech regarding the guardrail removal were not so dangerous or defective that no reasonable contractor would follow them. Summary judgment in favor of C–Tech was appropriate.

## II. Judgment on the Pleadings for IDOT

[redacted] IDOT challenged Hapner's claim in the trial court by way of a motion for judgment on the pleadings in which it raised Hapner's contributory negligence. A judgment on the pleadings is appropriate when the pleadings present no material issues of fact, and the facts shown by the pleadings clearly entitle a party to judgment. *Mirka v. Fairfield of America, Inc.,* 627 N.E.2d 449, 450 (Ind.Ct.App.1994), *trans. denied.* A party moving for judgment on the pleadings admits for purposes of the motion all facts well pleaded and the untruth of any of its own allegations which have been denied, with all reasonable intendments and inferences taken against the moving party. *Id.*

[redacted] Tort claims against governmental entities such as IDOT are subject to common law principles of negligence because Indiana's Comparative Fault Act does not apply to such entities. IC 34–4–33–8 (repealed, now codified at IC 34–51–2–2); *Shand Mining, Inc. v. Clay County Bd. of Comm'rs,* 671 N.E.2d 477, 479 (Ind.Ct.App. 1996), *trans. denied.* Under such common law principles, any contributory negligence on Hapner's part, however slight, will bar his claim against IDOT, provided his negligence proximately contributed to his injuries. *See Sauders v. County of Steuben,* 693 N.E.2d 16, 18 (Ind.1998); *State v. Kallembach,* 452 N.E.2d 1027, 1030 (Ind.Ct.App.1983), *trans. denied.* The plaintiff's contributory negligence will bar all recovery regardless of any negligence on the defendant's part. *Kallembach,* 452 N.E.2d at 1030.

[redacted] The law of contributory negligence in Indiana consists of the following principles:

> "Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protec-

3. This "exception within the exception" was held not to apply to the subcontractor in *Blake* because the subcontractor did not complete its contract prior to the plaintiff's injuries. *Id.* The same is not true here, for it is undisputed that C–Tech completed the work it was asked to do and left the construction site well before Hapner's accident.

tion. A plaintiff must exercise that degree of care which an ordinarily reasonable person would exercise in like or similar circumstances. In addition, the plaintiff's negligence must either be the proximate cause of the injury of which complaint is made, or proximately contribute thereto. Since the question of contributory negligence does not arise except in a case where it has been shown that the defendant was guilty of negligence which was the proximate cause of injury, a plaintiff's negligence need not be the sole proximate cause of the injury but only a concurring or co-operating proximate cause."

*Peavler v. Board of Comm'rs of Monroe County*, 557 N.E.2d 1077, 1080 (Ind.Ct.App. 1990) (citations omitted), *trans. denied.* The existence of contributory negligence is usually a question of fact for the jury unless the facts are undisputed and only a single inference can be drawn therefrom. *Nesvig v. Town of Porter*, 668 N.E.2d 1276, 1281 (Ind. Ct.App.1996).

Hapner alleged in his amended complaint that as he was turning from Washington Center Road to State Road 3, he "momentarily turned his head toward the rear seat to say something to his two children and while doing so, [his] automobile veered slightly left and into the median of State Road 3." *Record* at 59. IDOT argued in support of its motion for judgment on the pleadings that such an allegation amounted to an admission of contributory negligence. In response to IDOT's motion, Hapner argued, as he does on appeal, that his driving was not the proximate cause of his injuries; rather, the unsafe guardrail proximately caused his injuries. In entering judgment for IDOT, the trial court found that Hapner's argument amounted to a concession that he was negligent. The court went on to find that Hapner's negligence was a contributing cause of his injuries thus entitling IDOT to judgment in its favor.

 Hapner challenges the trial court's legal determination that he was contributorily negligent on two grounds. First, he claims that his conduct did not fall below the standard to which he was required to conform for his own protection. Generally, an Indiana motorist has a duty to keep and maintain a proper lookout when driving on a roadway. *State v. Eaton*, 659 N.E.2d 232,

236 (Ind.Ct.App.1995), *trans. denied* (1996). Furthermore, an Indiana motorist who drives on a highway divided by an intervening space, a physical barrier, or a dividing section, must not drive his vehicle over, across, or within such space, barrier, or section. IC 9–21–8–17. By diverting his attention from the road to the back seat of his car, Hapner failed to maintain a proper lookout while driving. Furthermore, by driving into the median and guardrail of State Road 3, Hapner failed to comply with the statutory requirements of driving on a divided highway. Consequently, Hapner's conduct fell below the standard to which he was required to conform for his own protection.

 For his second challenge to the trial court's contributory negligence determination, Hapner claims that his driving did not proximately cause his injuries. A person's act or omission is a proximate cause of his injuries if the injuries are a natural and probable consequence which should reasonably have been foreseen or anticipated in light of the circumstances. *Havert v. Caldwell*, 452 N.E.2d 154, 158 (Ind.1983). "In order for a plaintiff's negligence to bar his recovery, his negligence must be a proximate cause, not a remote cause, of his injuries." *Estate of Hunt v. Board of Commr's of Henry County*, 526 N.E.2d 1230, 1236 (Ind.Ct. App.1988), *trans. denied* (1989). Like the issue of contributory negligence generally, the question of proximate cause is usually one of fact unless the facts are undisputed and support only one conclusion. *Bridgewater v. Economy Eng'g Co.*, 486 N.E.2d 484, 487 (Ind.1985).

 When evaluating foreseeability of an injury in the context of proximate cause, the focus is on the events that actually occurred. *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind.Ct.App.1996). From a perspective of hindsight, one looks back from the harm to the actor's negligent conduct. *Id.* (citing Restatement (Second) of Torts § 435(2) (1965)). Taking such perspective here, it is reasonably foreseeable that a person who diverts his attention from the road while driving and veers into the median will strike objects located in that median. Hapner's conduct in taking his eyes from the

road and veering into the median caused him to strike the guardrail located in the median. The fact that the negligence of others may also have contributed to his injuries, does not change the fact that his negligent driving was a contributing cause of such injuries. *See Peavler*, 557 N.E.2d at 1080 (plaintiff's negligence need not be sole proximate cause of injury but only concurring or cooperating proximate cause). The only inference to be drawn from the designated evidence is that Hapner's driving was a proximate cause of his injuries; his contributory negligence was established as a matter of law.[4]

### III. IDOT as a Nonparty

■ S.E. Johnson challenges the trial court's entry of summary judgment on the question of whether IDOT, as a dismissed party, may be joined as a nonparty for purposes of fault allocation. At the time Hapner's cause of action accrued, a nonparty was defined in Indiana's Comparative Fault Act as: "a person who is, or may be, liable to the claimant in part or in whole for the damages claimed but who has not been joined in the action as a defendant by the claimant. A nonparty shall not include the employer of the claimant." IC 34–4–33–2 (repealed, now codified at 34–6–2–88 which provides that "'[n]onparty', for purposes of IC 34–51–2, means a person who caused or contributed to cause the alleged injury, death, or damage to property but who has not been joined in the action as a defendant."). Under the same nonparty definition as is applicable here, our supreme court has determined that a dismissed party is not a "non-party" for fault allocation purposes. *Handrow v. Cox*, 575 N.E.2d 611, 613 n. 1 (Ind.1991) (citing *Bowles v. Tatom*, 546 N.E.2d 1188 (Ind.1989) and holding that dismissal of State on immunity grounds precluded it from being named non-

party). Pursuant to this authority, we hold that IDOT, dismissed from the lawsuit by way of a judgment on the pleadings, is not a nonparty for purposes of fault allocation.[5]

Affirmed.

STATON and ROBB, JJ., concur.

---

4. We decide here only that the trial court was correct in finding as a matter of law that C–Tech, as a subcontractor that had completed its work, is not liable for Hapner's injuries, and that Hapner's contributory negligence bars his claim against IDOT, a governmental entity. We do not render any opinion as to whether S.E. Johnson is or may be liable to Hapner for injuries allegedly caused by the condition of the guardrail.

5. We recognize that this court has allowed the naming of certain dismissed defendants as nonparties. *See Koziol v. Vojvoda*, 662 N.E.2d 985

(Ind.Ct.App.1996); *Gilliam v. Contractors United, Inc.*, 648 N.E.2d 1236 (Ind.Ct.App.1995), *trans. denied; Barber v. Cox Communication, Inc.*, 629 N.E.2d 1253 (Ind.Ct.App.1994), *trans. denied.* In those cases, however, the defendant was voluntarily dismissed by the plaintiff through a settlement agreement. Here, on the other hand, as in *Handrow* and *Bowles*, IDOT was involuntarily dismissed by way of a dispositive motion. IDOT is not and may not be liable to Hapner due to Hapner's contributory negligence. Accordingly, IDOT is not a nonparty.