**P. Jay FETNER, Appellant (Plaintiff Below),**

v.

**MAURY BOYD & ASSOCIATES, INC., Appellee (Defendant Below).**

No. 49A04–9001–CV–11.

Court of Appeals of Indiana, Fourth District.

Dec. 19, 1990.

Rehearing Denied Jan. 25, 1991.

Gil I. Berry, Jr., Buck, Berry, Landau & Breunig, Indianapolis, for appellant.

Robert R. Clark, Richard S. Pitts, Lowe, Gray, Steele & Hoffman, Indianapolis, for appellee.

CONOVER, Judge.

Defendant–Appellant P. Jay Fetner (Fetner) appeals a judgment award by the Marion Superior Court in favor of Plaintiff–Appellee Maury Boyd & Associates (Boyd).

We affirm.

Fetner raises three issues for our review. We consolidate and restate them as:

> 1. whether the trial court erred in determining it had personal jurisdiction over Fetner, and
>
> 2. whether the trial court erred in denying Fetner's motion for continuance.

Boyd is an Indiana corporation with its principal place of business in Marion County, Indiana. Fetner is an attorney, businessman, and author with his principal residence in the District of Columbia.

In early 1987, Noble Hatfield, a Boyd employee, contacted Fetner in Washington, D.C., concerning the printing of Fetner's book, *The African Safari.* The parties exchanged numerous phone calls as they attempted to work out the details of printing the book. Subsequently, Fetner came to Indianapolis to view the printing plant and tour the printing facilities. While he was in Indianapolis, Fetner further discussed the particulars of having Boyd print his book. No agreement was reached while Fetner was in Indianapolis, but after his return to Washington, D.C., the parties exchanged documents. Fetner eventually agreed to let Boyd, through the Indianapolis printing facilities of Shepard Poorman, begin printing the book.

Fetner returned to Indianapolis on approximately three occasions to oversee the printing process and to approve proofs of color photographs which were to be included in the book. During Fetner's third trip to Indianapolis, Boyd expressed concern that the parties did not have a formal contract. After negotiation at the Shepard Poorman plant in Indianapolis, the parties

both signed a document in which Boyd agreed to print *The African Safari* and submit a final invoice, and Fetner agreed to make payment for the printing services, with the final payment due November 15, 1987. Fetner and Boyd further agreed at some future date to draw up a formal purchase order based on the specifications they attached to the agreement.

Although Fetner expressed initial satisfaction with the services provided by both Standard Poorman and Boyd, a dispute arose concerning payment. On March 31, 1988, Boyd filed suit against Fetner in the Marion Superior Court. It alleged Fetner had failed to pay for printing services already performed.

Subsequent to the filing of Boyd's complaint, Fetner filed an affidavit in which he claimed he was not doing business in Indiana, and then moved to dismiss the complaint because the trial court lacked *in personam* jurisdiction over him. A hearing was scheduled on the motion to dismiss, but Fetner, who was representing himself, failed to appear. The hearing was rescheduled and conducted on a later date. The motion to dismiss was subsequently denied.

The court set the case for trial on the merits for April 11, 1989. It also ordered Fetner to comply with discovery requests.

On March 22, 1989, Boyd moved for sanctions against Fetner because Fetner failed to answer interrogatories in a timely manner. A hearing was set for April 3, 1989, on the sanctions motion. Fetner was approximately two hours late for the hearing, and in his absence, the court imposed sanctions for failure to respond to the interrogatories. At the time of the April 3 hearing, Boyd moved to have the trial date reset. The court granted Boyd's motion and reset the trial for August 1, 1989. Later the same day, Fetner filed a motion in which he stated he was experiencing trouble in securing local counsel. Nevertheless, he requested the trial be set for July rather than August because of business conflicts. The court then reset the trial for July 18, 1989.

On July 10, 1989, a local attorney entered an appearance in Fetner's behalf and moved for a continuance in order to properly prepare for the trial. The court denied the motion for continuance and allowed the local attorney to withdraw his appearance. Fetner made a *pro se* motion for reconsideration of the denial to continue the trial date. In a pre-trial conference on July 17, 1989, the court advised Fetner to be ready for trial on the next day. Fetner failed to appear for trial and, after hearing evidence from Boyd, the court entered judgment against him. The court also ordered sanctions against Fetner because he had previously failed to appear for a deposition scheduled to be taken in Washington, D.C. Fetner now appeals.

Fetner contends the trial court erred in asserting jurisdiction over him because he was not "doing any business" as that phrase is used in our long-arm statute, Ind. Trial Rule 4.4(A)(1). We disagree.

The trial court's jurisdiction over Fetner is predicated on Ind. Trial Rule 4.4(A)(1) which grants the trial court jurisdiction over a party doing any business in Indiana. The purpose of that trial rule is to extend jurisdiction to the boundaries permitted by the due process clause of the fourteenth amendment to the federal constitution. *Dura–Line Corporation v. Sloan* (1986), Ind.App., 487 N.E.2d 469, 470. It is well-established that due process requires certain "minimum contacts" between the defendant and the state before jurisdiction may be exercised. *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95. The contacts must be of such quality that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* Whether minimum contacts exist in a particular factual setting must be determined on a case-by-case basis, and there are no hard and fast rules regarding the existence of a minimum contact. *Kulko v. Superior Court of California* (1978), 436 U.S. 84, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132. The factors to be considered in making a determination as to the existence of jurisdiction are: 1) the nature and quality of the contacts with the forum state; 2) the quantity of contacts with the state; 3) the relationship between those

contacts and the cause of action; 4) the interest of the forum state in providing a forum for its residents; and 5) the convenience of the parties. *Tietloff v. Lift-A-Loft Corp.* (1982), Ind.App., 441 N.E.2d 986, 989. The first three factors are the primary factors in determining whether *International Shoe* standards are met. *Id.*

Two recent Indiana cases illustrate the application of T.R. 4.4 and its relation to due process. In *Suyemasa v. Myers* (1981), Ind.App., 420 N.E.2d 1334, we held the trial court had personal jurisdiction over a nonresident defendant who entered the state and visited with the plaintiffs for the purpose of selling stock in an out of state company. We found the defendant's sales presentations constituted negotiations, and resulted in an oral agreement between the defendant and residents of this state. The defendant argued he did not make enough trips into the state to warrant an exercise of personal jurisdiction over him. We held the quantity of the contacts was not the only criterion, but emphasized the importance of considering the quality and nature of the activities taking place within the state. 420 N.E.2d, at 1341. We concluded the negotiations of sales and the resulting oral agreements were activities whereby the defendant "purposefully availed himself of the privilege of conducting business activities within this state." *Id.*, at 1342. In *Woodmar Coin Center, Inc. v. Owen* (1983), Ind. App., 447 N.E.2d 618, we found our state court had jurisdiction over a nonresident who had never entered our state. We found "minimum contacts" had been established when the defendant 1) initiated a relationship with a resident seller of coins; 2) entered into substantial negotiations with the resident seller over the telephone; and 3) the negotiations resulted in a contract between the parties. We held the defendant had "purposefully availed himself of the benefits and responsibilities of doing business in this State by soliciting, negotiating, and forming a contract with an Indiana resident." *Owen*, 447 N.E.2d, at 621.

■ In the present case, Fetner entered our State on at least four occasions. While in the State, he negotiated a contract with Boyd regarding the use of Shepard Poorman's Indianapolis facilities, oversaw critical aspects of the printing, and inspected and approved or rejected proofs of pictures to be used in *The African Safari.* In addition, on his last trip to Indianapolis, he negotiated various terms of the interim agreement, and signed it. These contacts and activities were not "random", "fortuitous", or "attenuated", but were significant and purposeful. Fetner's conduct and connections with Boyd were of the type which made it reasonably foreseeable he could be hailed into an Indiana court in a suit arising from them.

Fetner argues the recent case of *Dura-Line Corp. v. Sloan* (1986), Ind.App., 487 N.E.2d 469, mandates a finding that the trial court had no personal jurisdiction over him in this matter. In *Dura-Line*, we found our state courts had no personal jurisdiction over a nonresident corporation whose only presence in the state occurred when one of its vice-presidents made a social visit to the resident plaintiff's home and entered into "some conversation concerning potential customers and contact persons." 487 N.E.2d, at 471. We distinguished *Woodmar, supra,* on the basis *Dura-Line* did not initiate contact with Sloan.

The present case is distinguishable from *Dura-Line.* While Dura-Line made only a single social visit to the plaintiff's Indiana residence, Fetner made four business trips in which he entered into negotiations, signed an agreement, and directed critical aspects of the printing of his book. These activities are far more purposeful and significant than Dura-Line's activities within this forum. The single factor of who initiated the business relationship between Fetner and Boyd is irrelevant in light of his subsequent contacts within the State.

Finally, Fetner argues the trial court erred in refusing to grant him a continuance to secure the services of local counsel. Under the facts of the case, we must disagree.

The granting or denial of a continuance is clearly within the discretion of the trial court. *Koors v. Great Southwest Fire Insurance Co.* (1988), Ind.App., 530 N.E.2d 780, 783, *reh. denied,* 538 N.E.2d 259. Denial of the motion is an abuse of discretion only if the movant shows good cause for granting the motion. *Id.;* T.R. 53.5. The United States Supreme Court considered the issue in *Ungar v. Sarafite* (1964), 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921, and stated:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

84 S.Ct. at 849–850. (Citations omitted).

In *Ungar,* the court held the trial court's denial of the appellant's motion for continuance was not a violation of due process. The court based its holding upon its finding that Ungar was given sufficient time to secure counsel under the facts of the case. The court also found the trial court did not err in its refusal to give Ungar a continuance to obtain certain evidence when Ungar had not shown diligence in searching for the evidence. The court concluded with the observation that other judges may have granted the continuance because the facts were arguable, but "the fact that something is arguable does not make it unconstitutional." 84 S.Ct. at 850.

 Fetner argues he made repeated attempts over the course of the litigation to hire local counsel. He also points to the fact he represented himself in the jurisdictional hearing, handled ongoing discovery, filed an answer to Boyd's complaint, and asserted cross-claims against Boyd. In his opinion, these were acts of good faith and prove he proceeded with diligence in attempting to secure trial counsel.

All these facts present an arguable reason for the grant of the continuance. However, Fetner's attempts to secure trial counsel over the time period from the filing of the case to the April 3, 1989, sanctions hearing, were sporadic at best. Furthermore, as the trial court observed, in April, 1989, Fetner requested the trial be advanced from the August, 1989 date set by the court to July, 1989. The record reveals from April, 1989 through the last week of June, 1989, Fetner made absolutely no attempt to secure local trial counsel. He waited until June 26, 1989, to call one local firm. He waited until the second week of July to call the firm which eventually agreed to represent him. Given the deference necessarily due a trial court's decision on this matter, and Fetner's lack of diligence during the time immediately approaching trial, we cannot say the denial of Fetner's motion for a continuance constituted a violation of due process.

Affirmed.

MILLER, P.J., and BUCHANAN, J., concur.