**NORTH TEXAS STEEL COMPANY, INC., Appellant–Defendant,**

v.

**R.R. DONNELLEY & SONS COMPANY, Appellee–Plaintiff.**

No. 43A04–9608–CV–325.

Court of Appeals of Indiana.

April 29, 1997.

Rehearing Denied July 7, 1997.

514

Edward L. Murphy, Jr., Larry L. Barnard, Miller Carson Boxberger & Murphy, Fort Wayne, for Appellant–Defendant.

Peter A. Schroeder, Nelson A. Nettles, Norris, Choplin & Schroeder, Indianapolis, for Appellee–Plaintiff.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant North Texas Steel Company, Inc. (NTS) appeals the trial court's denial of its motion to dismiss for lack of personal jurisdiction and its motion for change of venue in this action initiated by Plaintiff–Appellee R.R. Donnelley & Sons Company (RRD). In response, RRD challenges the jurisdiction of this court over the subject matter of NTS's appeal.

We affirm.

### ISSUES

NTS raises two issues for our review, which we restate as:

1. Whether the trial court erred in determining that it had personal jurisdiction over NTS.

2. Whether the trial court erred in denying NTS's motion for change of venue.

RRD raises one issue for our review, which we restate as:

1. Whether this court has appellate jurisdiction over the issues raised.

### FACTS AND PROCEDURAL HISTORY

RRD's primary business is printing and assembling catalogs for retailers. At its facility in Warsaw, Indiana, catalogs are printed and assembled in portions, called "signatures." After it prints a given amount of signatures, RRD stacks the group together, binds it with bands, stacks the bound materials on pallets, and binds the group with shrink-wrap plastic. RRD stores the pallets of signatures for a short period of time before further processing.

On or about June 28, 1993, RRD entered into a contract with Associated Material Handling Industries, Inc. (Associated), an Illinois corporation with a principal place of business in the same state, requiring Associated to provide a material handling system, including storage racks, sophisticated forklifts, conveyors, and other related equipment for RRD's facility in Warsaw, Indiana. Associated subcontracted the storage rack design and manufacture to Frazier Industrial Company (Frazier), a New Jersey corporation with a principal place of business in Long Valley, New Jersey. Frazier entered into a contract with NTS, a Texas corporation with a principal place of business in Fort Worth, which required NTS to manufacture or fabricate the rack system according to Frazier's design. After it completed the manufacturing process, NTS shipped the rack system to RRD's Warsaw facility through various carriers. Frazier paid the shipping costs.

The storage racks were installed and ready for use on March 21, 1994. On June 14, 1994, a majority of the storage racks collapsed. The pallets stored on the racks fell to the floor and broke, spilling the signatures. The collapse also caused the fire sprinkler system to burst and soak piles of signatures.

On December 18, 1995, RRD filed a complaint against Associated, Frazier, and NTS for damages caused by the collapse of the storage rack. The complaint included product liability, breach of contract, and negligence claims against the defendants.

After giving notice of depositions to two of RRD's expert witnesses, NTS filed a motion to dismiss the complaint on the basis of lack of personal jurisdiction. NTS also filed a motion for change of venue on the theory that it could not receive a fair trial in Kosciusko County. After hearing evidence and oral argument, the trial court denied both of NTS's motions. In its order on the motion to dismiss, the trial court stated:

3. The Court believes that, in weighing the contacts of [NTS] with the State of Indiana, its business practice has fairly submitted it to the jurisdiction of the Courts of Indiana. All of the evidence indicates that [NTS] performed all of its services within the State of Texas but that in so doing, it was specially preparing an item which it knew to be solely for shipment to [RRD] at Warsaw, IN. Because the item was prepared with the knowledge of its specific purpose for shipment and usage within the State of Indiana, the Court believes it proper to consider issues

of the product's alleged failure in Indiana courts.

> In comparing this special purpose manufacturing with production of a product of a general nature which could be sold on the open market, could be transported to virtually any site, and allegedly cause an injury in a distant jurisdiction, the Court deems the differences sufficient to establish in personam jurisdiction in the first case and to observe the lack thereof in the second.

(R. 468–69).

In its order denying NTS's motion for change of venue, the trial court acknowledged that RRD was an important institution in Kosciusko County. However, the court determined that this fact did not prevent NTS from receiving a fair trial in the county.

Upon NTS's motion, the trial court certified its ruling for interlocutory appeal. We accept jurisdiction.

### DISCUSSION AND DECISION

### I. THIS COURT'S EXERCISE OF APPELLATE JURISDICTION

RRD contends that this court lacks jurisdiction to review the trial court's denial of NTS's motions to dismiss for lack of personal jurisdiction and for change of venue. RRD argues that Article 7, § 4 of the Indiana Constitution[1], Ind.Appellate Rule 4(A)(5)[2], and Ind.Original Action Rule 1[3], provide that our supreme court has exclusive jurisdiction over appeals concerning trial court jurisdiction and venue. Succinctly stated, RRD contends that issues raised in the trial court concerning lack of personal jurisdiction and

change of venue may only be raised in an original action before our supreme court.

The jurisdiction of this court is set forth by our constitution in Article 7, § 6, which provides that we "shall exercise appellate jurisdiction under such terms and conditions as the Supreme Court shall specify by rules . . . ." In App.R. 4(B)(6), our supreme court specified that appeals from interlocutory orders are appropriate where the trial court certifies its orders and this court accepts jurisdiction. It is on this authority that this court has exercised jurisdiction over numerous cases involving the issue of a trial court's determination of personal jurisdiction and venue in the past. It is also on this authority that we exercise jurisdiction in this case.

■■■ The decision to grant or deny a motion to dismiss based on lack of personal jurisdiction or venue lies within the sound discretion of the trial court. *See Freemond v. Somma,* 611 N.E.2d 684, 687 (Ind.Ct.App. 1993), *reh'g denied, trans. denied* (personal jurisdiction); *Bellmore v. State,* 602 N.E.2d 111, 116 (Ind.1992), *reh'g denied* (change of venue). Any error arising from an abuse of discretion must be raised in an appeal, not in an original action. *State ex rel. Robinson v. Grant Superior Court No. 1,* 471 N.E.2d 302, 303 (Ind.1984). Therefore, the question of personal jurisdiction is one for appeal, not for an original action.

■■■ RRD argues that in allowing this court to adjudicate appeals from determinations of personal jurisdiction, the supreme court improperly delegated its constitutional responsibility.[4] *See Carpenter v. State,* 266

---

1. Article 7, § 4 provides that "[t]he Supreme Court shall have no original jurisdiction except in . . . supervision of the exercise of jurisdiction by the other courts of the State; and issuance of writs necessary or appropriate in aid of its jurisdiction."

2. App.R. 4(A)(5) provides that our supreme court shall have exclusive jurisdiction of "[s]upervision of the exercise of jurisdiction by the other courts of the State, including the issuance of writs of mandate and prohibition."

3. Orig.Act.R. 1(A) provides that our supreme court has "exclusive, original jurisdiction to supervise the exercise of jurisdiction of all inferior

state courts, including the Court of Appeals by virtue of Indiana Constitution, Article 7, Section 4, and Ind.Appellate Rule 4(A)(5)." Orig.Act.R. 1(B) provides that Original Action rules apply to "[a]ctions commenced in the Supreme Court pursuant to the authority in section (A) above for writs of mandamus or prohibition against inferior state courts and the judge or judges thereof and concerned solely with the question of jurisdiction . . . ."

4. RRD cites *State ex rel. Hovey v. Noble,* 118 Ind. 350, 21 N.E. 244 (1888), in support of its argument. This case actually stands for the proposition that the judiciary cannot delegate its respon-

Ind. 98, 360 N.E.2d 839, 842 (1977) (holding that Article 7, § 4 merely authorizes the supreme court to supervise the exercise of jurisdiction, not to create it.). RRD's reading of the constitution is too restrictive. The supreme court's original jurisdiction to provide "supervision of the exercise of jurisdiction by the other courts of the State" is for the purpose of ensuring that inferior courts act within the nondiscretionary jurisdiction granted by the Constitution and/or applicable statutes. The grant of original jurisdiction is not a mandate that issues pertaining to the trial court's discretion, such as a determination of personal jurisdiction over a defendant, may only be challenged by original action.

## II. THE TRIAL COURT'S EXERCISE OF JURISDICTION OVER NTS

The jurisdiction of an Indiana court over a nonresident entity is predicated on Ind.Trial Rule 4.4(A)(1), which grants jurisdiction over an entity doing any business in Indiana. The purpose of the trial rule is to extend jurisdiction to the boundaries permitted by the due process clause of the Fourteenth Amendment to the federal constitution. *Fetner v. Maury Boyd & Assocs.*, 563 N.E.2d 1334, 1336 (Ind.Ct.App.1990), *reh'g denied, trans. denied.* · The Due Process Clause requires that the defendant have "minimum contacts" with the forum state so that the assertion of jurisdiction "does not offend the 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted). Whether minimum contacts exist in a particular factual setting must be determined on a case-by-case basis, and there are no hard and fast rules regarding the existence of minimum contacts. *Kulko v. Superior Court of California*, 436 U.S. 84, 92–93, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978). The due process analysis examines whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen*

sibilities to another branch of government. 21

*Corp. v. Woodson*, 444 U.S. 286, 296–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

There are two different types of due process analyses in personal jurisdiction cases: general and specific. *Curtis Management Group v. Academy of Motion Picture Arts and Sciences*, 717 F.Supp. 1362, 1366 (S.D.Ind.1989). General jurisdiction allows a court to entertain a suit against a defendant "because of the defendant's general presence in the forum state regardless of whether that presence is related to the litigation at hand." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Courts are more demanding when jurisdiction is sustained only on a basis of general jurisdiction. In such a case, the defendant must have "continuous and systematic general business contacts" in the forum state. *Hexacomb Corp. v. Damage Prevention Products Corp.*, 905 F.Supp. 557, 561 (N.D.Ind.1995) (quoting *Helicopteros*, 466 U.S. at 416–17, 104 S.Ct. at 1873). Specific jurisdiction, on the other hand, "turns on an assessment of the 'relationship among the defendant, the forum, and the litigation.'" *Id* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 202–04, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). Specific jurisdiction is utilized "where the defendant lacks a general presence in the state and where the only possible basis for haling the defendant into court [arises from or is related to] the contacts giving rise to the litigation." *Curtis*, 717 F.Supp. at 1366. The defendant must have purposely availed himself of the "privilege of conducting activities" in the forum state. *Burger King*, 471 U.S. at 473–75, 105 S.Ct. at 2183. This insures that jurisdiction over the defendant will not be based on "random, fortuitous, or attenuated contacts" with the forum state. *Id.* When a cause of action arises from or is related to the defendant's contacts with the forum, less is required to support jurisdiction than when the cause of action is unrelated to those contacts. *Mullen v. Cogdell*, 643 N.E.2d 390, 397 (Ind. Ct.App.1994), *reh'g denied, trans. denied.* Thus, even "a single act" can support a finding of specific jurisdiction, as long as that act creates a "substantial connection" with the

N.E. at 249.

forum state. *Burger King*, 471 U.S. at 475, n. 18, 105 S.Ct. at 2184, n. 18 (citing *McGee v. International Life Insurance Co.*, 355 U.S. 220, 222–24, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)).

 In Indiana, jurisdiction is presumed and need not be alleged. *Fidelity Financial Services, Inc. v. West*, 640 N.E.2d 394, 396 (Ind.Ct.App.1994). A party challenging jurisdiction must establish lack of jurisdiction by a preponderance of the evidence unless lack of jurisdiction is apparent on the face of the complaint. *Id.* It is within the trial court's discretion to find the jurisdictional facts; once the facts are decided, the issue of jurisdiction is a question of law. *Id.*

 In the present case, we do not find that general jurisdiction exists. There is no evidence to indicate that NTS has a continuous and systematic presence in Indiana through direct advertising or direct solicitation. Furthermore, there is no evidence to indicate that NTS has an office, an agent, employees, or property in the state.

 We do find, however, that the trial court was correct in determining that it had specific personal jurisdiction over NTS as RRD's claims arise from or relate to NTS's contact with Indiana.[5] NTS specifically manufactured the rack system for a corporation located in Indiana and then shipped that system to Indiana. The acts of manufacturing and shipping were done with the knowledge that the system was for use by RRD in Indiana. The evidence does not indicate that NTS was a "local" company which "happened" to expand its business into Indiana. Instead, the evidence indicates NTS had a twelve year relationship with Frazier, a New Jersey company. Pursuant to this relationship, Frazier provided NTS with customers for rack systems, including four customers in Indiana. NTS, through its relationship with Frazier, purposely availed itself of the privilege of conducting business in Indiana, and it cannot complain that jurisdiction is being asserted by an Indiana court upon the basis of a "random, fortuitous, or attenuated" contact with the state.

 We also find that the exercise of personal jurisdiction over NTS comports with the due process concepts of fair play and substantial justice. The factors which form consideration of the fairness of the exercise of personal jurisdiction are (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of individual States in furthering fundamental substantive social policies. *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113–15, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

 The burden that NTS faces in adjudicating its case in Indiana is understandably heavier than the burden of defending against a suit filed in Texas. However, this factor alone is not sufficient to defeat the existence of jurisdiction. *Hexacomb*, 905 F.Supp. at 563. Furthermore, the burden is offset by the combined interests of (1) RRD in adjudicating in the forum where the damage allegedly occurred and where all the defendants are subject to jurisdiction; (2) Indiana in the application of its product liability law and in obtaining relief for one of its citizens; and (3) the interstate judicial system in the resolution, in a single action, of a controversy involving parties from four states.

NTS places great reliance on *CMMC v. Salinas*, 929 S.W.2d 435 (Tex.1996), and similar cases, for the proposition that "isolated" contacts with the forum state do not warrant an exercise of personal jurisdiction. In *CMMC*, a small Texas winery ordered a winepress from an independent distributor. The distributor in turn ordered the winepress from a French manufacturer, which wired the press for use in the United States and then shipped the press to Texas. An injury occurred in Texas while a winery employee was cleaning the press, and the in-

---

5. We note that RRD also raises the issues of transient jurisdiction and estoppel as relevant to an affirmance of the trial court's exercise of personal jurisdiction over NTS. These issues are rendered moot by our determination here.

jured employee brought a products liability action against CMMC in Texas. The issue of personal jurisdiction eventually was examined by the Texas Supreme Court, which framed the issue as "whether the Fourteenth Amendment permits a state court to take personal jurisdiction over a foreign manufacturer merely because it knew its allegedly defective product would be shipped to that state." *Id.* at 436. The court ultimately held that "CMMC's mere knowledge that its winepress was to be sold and used in Texas and its wiring the machine for use in the United States were not sufficient to subject CMMC to the jurisdiction of Texas courts." *Id.* at 439.

The distinguishing factor between the facts in *CMMC* and the facts in the present case was noted by the trial court in this case. Pursuant to its contract with Frazier, NTS manufactured a system for RRD and then shipped the system to Indiana for RRD's use. This specific contact exceeded CCMC's shipping of a generic product to Texas.

### III. THE TRIAL COURT'S DENIAL OF NTS'S CHANGE OF VENUE MOTION

NTS contends that the trial court erred in denying its motion for change of venue. The motion was filed pursuant to Ind.Trial Rule 76(A), which mandates a change of venue "upon a showing that the county where suit is pending is a party or that the party seeking the change will be unlikely to receive a fair trial on account of local prejudice or bias regarding a party or the claim or defense presented by a party."

There are two bases for NTS's motion: (1) it cannot receive a fair trial against RRD in Kosciusko County because RRD is well respected in the county; and (2) it cannot receive a fair trial because county citizens would believe that denying RRD's claim for $12 million would have an adverse impact on the county. In the hearing on the motion, NTS put on evidence indicating that RRD: (1) ranks as the second largest employer in Kosciusko County; (2) provides more than $54 million annually to the economy of Kosciusko County; (3) actively engages in charitable interests in Kosciusko County; and (4) enjoys generally positive coverage by the primary newspaper in the county. In opposition to the evidence submitted by NTS, RRD put on evidence establishing that it has been criticized by the citizens of Kosciusko county for various reasons.

The trial court denied the motion from the bench. It subsequently issued a "Memorandum Upon Denial Of Change Of Venue Motion," which delineated the reasons for the denial. In the memorandum, the trial court noted that RRD enjoys a good reputation in Kosciusko County and that most, but not all, publicity is favorable to RRD in the county. The court also noted that the object of T.R. 76(A) is not "to find a location where no one is familiar with any participants or any of the issues." (R. 471). The court further noted that RRD's reputation neither created prejudice toward NTS nor influenced citizens of the county to forego their duty of impartiality as jurors.

There is no Indiana case law which examines the issues raised by NTS's motion. NTS cites cases from other states which uphold a trial court's grant of a motion[6], while RRD cites cases which uphold a trial court's denial of a motion[7]. Two conclusions

---

6. *See Haugo v. Haaland,* 349 N.W.2d 25, 28–29 (N.D.1984) (holding that a trial court did not abuse its discretion in granting a motion to change venue in a case based on Dram Shop statutes where (1) the defendant bar was organized as a nonprofit organization to support community interests, primarily a community hospital; (2) the county had a small population; and (3) community leaders had commended a local judge for his alleged leniency on traffic offenders); *Althiser v. Richmondville Creamery Co.,* 13 A.D.2d 162, 215 N.Y.S.2d 122 (1961) (holding that a trial court did not abuse its discretion in granting a motion to change venue in a case filed by dairy farmers and milk producers where the

individuals interested in the outcome of litigation constituted a large portion of eligible jurors in the county).

7. *See Braswell v. Money,* 344 So.2d 767 (Ala. 1977) (holding that a trial court did not abuse its discretion in denying a motion for change of venue in an action involving the county's largest employer where there was no evidence that the trial had created widespread interest and there was no evidence that opinions had been formed by county residents); *South Carolina Electric and Gas Co. v. Aetna Insurance Co.,* 235 S.C. 147, 110 S.E.2d 165 (1959) (holding that a trial court did

can be drawn from these cases: (1) the trial court has much discretion in making its fact-sensitive ruling on a motion to change venue; and (2) a party should not be penalized for its good reputation.[8]

 A party seeking to change venue has the burden to prove the existence of local prejudice or bias which prevents it from receiving a fair trial. T.R. 76(A). We will reverse a trial court's ruling on a motion to change venue only upon a showing of abuse of discretion by the trial court. T.R. 76(A); *Bradley v. State*, 649 N.E.2d 100, 108 (Ind. 1995), *reh'g denied.* An abuse of discretion occurs only when the trial court arrives at a conclusion that is clearly against the logic and effect of the facts and circumstances before the court. *Shanklin v. Shireman*, 659 N.E.2d 640, 642 (Ind.Ct.App.1995).

 In the present case, NTS showed, and the trial court accepted the fact, that RRD has a good reputation and strong presence in Kosciusko County. NTS then tried to show that it must be inferred from RRD's reputation and presence that citizens of Kosciusko County would be prejudiced against

NTS and biased in favor of RRD in an action involving a large sum of money. Although the suggested inference may be drawn from the evidence, we do not find that it must be drawn. Therefore, we cannot say that the trial court abused its discretion in not drawing the inference urged upon it by NTS.[9]

## CONCLUSION

This court has jurisdiction over NTS's appeal. In exercising our jurisdiction, we hold that the trial court has personal jurisdiction over NTS. We further hold that the trial court did not abuse its discretion in denying NTS's motion for change of venue.

Affirmed.

DARDEN and BAKER, JJ., concur.

---

not abuse its discretion in denying a motion for change of venue merely because one party had a good reputation in the county); *Bennett v. Jackson*, 172 S.W.2d 395 (Tex.Ct.App.1943), *reh'g denied* (holding that a trial court did not abuse its discretion in denying a motion for change of venue where the movant failed to show bias).

**8.** *See Braswell*, 344 So.2d at 770; *Aetna*, 110 S.E.2d at 168; *Bennett*, 172 S.W.2d at 398.

**9.** We note that the trial court wisely stated that it would entertain a second motion for change of venue upon an indication of prejudice or bias during voir dire.