**A Minor, M.S., By Minor's Next Friend, P.S., Appellant–Petitioner,**

v.

**EAGLE–UNION COMMUNITY SCHOOL CORPORATION, Appellee–Respondent.**

No. 06A04–9806–CV–291.

Court of Appeals of Indiana.

Oct. 28, 1999.

Rehearing Denied Dec. 3, 1999.

M.S. by P.S., Indianapolis, Indiana, Appellant Pro Se.

Jack G. Hittle, Church, Church, Hittle & Antrim, Noblesville, Indiana, Attorney for Appellee.

## OPINION

KIRSCH, Judge

M.S. (the Student) appeals the trial court's judgment upholding a student disciplinary action taken against the Student by Zionsville High School. The Student presents eleven issues on appeal. Restated and compressed, those issues are:

I.  Whether the trial court erred by upholding the school's disciplinary policies against the Student's challenge to the validity of those policies.

II.  Whether the trial court erred by upholding the school's disciplinary action against the Student's challenge that the action violated his procedural due process rights.

III.  Whether the trial court erred by denying the Student's motion for a change of venue.

IV.  Whether genuine issues of material fact preclude summary judgment in favor of the school.

V.  Whether the judicial review section of the Indiana Student Discipline Act [1] is unconstitutional.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The Student was a sophomore at Zionsville High School in the fall of 1996, enrolled in geometry as part of a "Core 40" college preparation curriculum.[2] The geometry class was held at midday, and halfway through the class period the students

---

1.  *See* IC 20–8.1–5.1–15.

2.  The Core 40 is a curriculum model of academic course work designed for college preparation. IC 20–10.1–5.7–1. The Student states that completion of the Core 40 entitles the student to additional college funds and special consideration for college admission. The Student offers no citation or other authority in support of this statement.

were given a lunch break. During this break, the Student sometimes played basketball. On three occasions before mid-November, the Student failed to stop playing in time to return to geometry before the tardy bell. On each occasion, the teacher informed the Student of the tardiness. After the third tardy the teacher referred the Student to the Assistant Principal, who assigned the Student to a detention. The Assistant Principal issued a written notice of detention to the Student, which the Student was to deliver to the Student's parents. The Student served the detention, but did not deliver the written notice.

In mid-November, the Student was tardy for the fourth and fifth times. The Assistant Principal held a conference with the Student and the Student's mother to discuss the tardiness. The Record contains no documentation of the conference, but the Assistant Principal's affidavit indicates that during the conference he apprised the Student of the school's disciplinary policy concerning chronic tardiness and warned the Student and his mother that the school would withdraw the Student from geometry if the Student was tardy one more time.

The Student was tardy again in early December. As a result, the School withdrew the Student from geometry and assigned the Student to study hall. The Student received no credit for geometry, and the school deleted the class from the Student's record.

The Student appealed the school's disciplinary action to the local school board. The school board affirmed the school's action. The Student then appealed the school board's decision to the trial court, in accordance with the Indiana statutory procedures for review of school disciplinary decisions. In the trial court, the Student sought summary judgment. The court denied the Student's summary judgment motion and instead granted summary judgment in favor of the school. The Student now appeals.

## DISCUSSION AND DECISION

### I.  Standard of Review

Summary judgment is appropriate when no material facts are in dispute in the litigation. *Sizemore v. Arnold,* 647 N.E.2d 697, 698 (Ind.Ct.App.1995). When reviewing a summary judgment, this court applies the same standard as the trial court. *Wickey v. Sparks,* 642 N.E.2d 262, 265 (Ind.Ct.App.1994), *trans. denied* (1995). A summary judgment must be affirmed on appeal if the evidentiary materials properly presented to the trial court demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Barga v. Indiana Farmers Mut. Ins. Group, Inc.,* 687 N.E.2d 575, 576 (Ind.Ct.App.1997), *trans. denied* (1998). In determining whether summary judgment is appropriate, all facts and reasonable inferences must be construed against the moving party. *Wickey,* 642 N.E.2d at 265.

### II.  School Disciplinary Policy

The Student contends that the school tardiness policy is invalid, arguing that the policy conflicts with the Indiana Student Discipline Act, IC 20–8.1–5.1–1 to –27. In particular, the Student claims that the school policy allows the assistant principal to remove a student from class for more than five days, while the Act limits removal to five days or less. The school responds that the Act contains no such limit. Further, the school defends its disciplinary policy by providing evidence that the policy was properly adopted, distributed, and implemented.

The school's tardiness policy reads as follows:

"Tardiness shall be handled in the following manner:

1.  Second tardy: teacher-student conference (documented).

2. Third tardy: student referred to the assistant principal. An administrative detention will be assigned and the parent notified.

3. Fourth tardy: Conference held with the assistant principal, student, parent and teacher to bring an immediate solution to the tardy problem. Failure to resolve the tardy problem may result in the student being withdrawn from class. The final decision shall rest with the assistant principal."

*Record* at 146.

The Student Discipline Act grants school corporation personnel "the right, subject to this chapter, to take any disciplinary action necessary to promote student conduct that conforms with an orderly and effective educational system." IC 20–8.1–5.1–3(b). Section 4 of the Act authorizes teachers and other school staff members having students under their charge "to take any action that is reasonably necessary to carry out or to prevent an interference with an educational function that the person supervises." IC 20–8.1–5.1–4(b). If such a staff member removes a student from an educational function supervised by the staff member (such as a class), the removal may not exceed five school days. IC 20–8.1–5.1–4(c).[3]

Here, the assistant principal ordered that the Student be removed from class for the last several weeks of the semester. If the assistant principal were merely a staff member within the meaning of Section 4 of the Act, the removal would violate the five-day rule. According to the school's policy, however, the assistant principal was acting as the principal's designee. *Record* at 146 ("The final decision [concerning disciplin-

ary action for tardiness] shall rest with the assistant principal"). Sections 1 and 5 of the Student Discipline Act specifically allow the principal's designee to take disciplinary action exceeding the five-day limit. IC 20–8.1–5.1–1 (the term "principal" includes a principal's designee); IC 20–8.1–5.1–5 (principal may take any action reasonably necessary for education function). Accordingly, the assistant principal's order did not violate the five-day rule of the Student Discipline Act.[4]

■ The Student also argues that the removal from class reduced the Student's instructional hours below the six-hour minimum prescribed by IC 20–10.1–2–1. In response, the school cites Section 24 of the Act, which states:

"If a student is suspended or expelled from school or from any educational function under this chapter, the student's absence from school because of the suspension or expulsion is not a violation of IC 20–8.1–3 or any other statute relating to compulsory school attendance."

IC 20–8.1–5.1–24. Both the school and the Student agree that Section 24 relieves the school of the six instructional hour requirement when a student is suspended or expelled. The Student, however, claims that a student is removed from an educational function (rather than suspended or expelled), the school must still provide six hours of instructional time daily.[5]

The Student misinterprets Section 24. Part of the misinterpretation stems from ambiguity in the Act concerning three types of disciplinary action: (1) suspension from school, (2) expulsion from school, and (3) removal from an education-

---

3. The Student cites Section 18 of the Act in support of the five-day limit. That section, however, applies only to removal of a student by a teacher from the teacher's class. IC 20–8.1–5.1–18(b)(7).

4. The Student argues that the assistant principal is not properly certified. The Student Discipline Act does not require the designee to be certified.

5. Classes are included in the Act's broad definition of "educational function": " 'educational function' means the performance by a school corporation, or its officers or employees, of an act or a series of acts in carrying out school purposes." IC 20–8.1–1–9.

al function. Section 24 of the Act, as quoted above, relieves schools of the six hour requirement when a student is "suspended or expelled from school *or* from any educational function." IC 20–8.1–5.1–24 (emphasis added). Absent any statutory definitions the Act would be interpreted according to traditional grammatical principles, making relief from the six hour requirement available only when a student is suspended or expelled from an educational function.

The Act's definitions, however, make clear that there is no such thing as suspension or expulsion from an educational function. The Act defines suspension as: "any disciplinary action that does not constitute an expulsion ... whereby a student is *separated from school attendance* for a period of not more than ten (10) days." IC 20–8.1–1–11(emphasis added). Similarly, expulsion requires "separation from school." IC 20–8.1–1–10. A student who is removed from an educational function continues to attend school but is prohibited from participating in a certain function. As such, the Section 24 reference to educational function must refer to removal from an educational function, i.e., withdrawn from a class but allowed to attend school. Based on these definitions of the disciplinary actions, Section 24 relieves schools of the six hour instructional requirement when the school removes a student from an educational function, as well as when a student is suspended or expelled.

Having determined that the school's disciplinary policy does not conflict with the Indiana Student Discipline Act, we find no ground for reversal of the trial court's summary judgment upholding the policy.

### III. Procedural Requirements for Disciplinary Action

■ The Student attacks the school's procedures on two grounds. First, the Student claims that the school failed to adhere to the procedures published in its tardiness policy. Second, the Student claims that the school violated the substantive and procedural due process rights guaranteed by the federal and Indiana constitutions. In response, the school acknowledges that it did not complete all of the procedures listed in the handbook, but maintains that the procedures it used were sufficient.

In this case, the Student received the following procedural protections: The geometry teacher informed the Student of the first and second tardies. *Record* at 143. The assistant principal issued a written detention notice to the Student after the third tardy, which instructed the student to deliver the notice to the Student's parents. *Record* at 152. After the fourth tardy, the assistant principal held a conference with the Student and the Student's mother. At the conference, the assistant principal "outlined [the] tardy policy and informed the Student and the parent what would happen if there was one more tardy." *Record* at 153. After the school removed the Student from the class, the School Board heard and denied the Student's appeal from the disciplinary action.

■ These protections were sufficient to give the Student notice of the tardiness problem and of the consequences of failing to correct the problem. Although the Student received neither the pre-detention teacher conference nor the early parental notification required by the school tardiness policy, the conference with the assistant principal and the parent provided an adequate substitute for these early notice requirements. The Student does not contest the fact that the assistant principal issued a warning in the conference; the Student argues only that the conference was improper because the teacher did not attend. The Student fails to explain, however, how the teacher's attendance at the conference would have provided additional procedural protections to the Student. Absent some explanation of the harm the Student ascribes to the teacher's absence,

this court can find no reversible procedural violation.[6]

The Student's reliance on *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) is similarly unavailing. In *Goss,* the Supreme Court wrote:

"The authority possessed by the State to prescribe and enforce standards of conduct in its schools, although concededly very broad, must be exercised consistently with constitutional safeguards. Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."

419 U.S. at 574, 95 S.Ct. 729.

The disciplinary actions and procedures invalidated in *Goss,* however, are very different from the action and procedure at issue here. In *Goss,* the students had been suspended for up to ten days without notices or hearings. Here, the Student received at least two notices of the tardiness problem: a detention, and a conference with the assistant principal. Further, the conference afforded the Student the opportunity to present any concerns about the tardy situation or the disciplinary process. The conference thus provided an adequate hearing for the Student concerning the tardy problem. *See Goss,* 419 U.S. at 577, 95 S.Ct. 729 ("[S]tudents ... must be given *some* kind of notice and afforded *some* kind of hearing"). *See also Wise v. Pea Ridge School Dist.,* 855 F.2d 560 (8th Cir.1988) (student assigned to in-school suspension for three days due to unex-

cused tardies cannot challenge suspension on procedural due process grounds).

## IV. Change of Venue Motion

■ At approximately the time the Student was experiencing the tardy problems, the Student's parents were involved in an unrelated dispute with the school corporation and a local foundation. The dispute concerned alleged improper distribution of a monetary donation the parents had made to the school through the foundation. In the disciplinary appeal, the Student sought a change of venue due to potential connections between the court and the foundation. The trial court denied the change of venue, and the Student now appeals that decision.

We review the trial court's ruling for abuse of discretion. Ind: Trial Rule 76(A); *North Texas Steel Co. v. R.R. Donnelley & Sons Co.,* 679 N.E.2d 513, 521 (Ind.Ct.App.1997) *trans. denied.* Here we find no abuse of discretion. The Student had the burden of proving that local bias or prejudice would prevent a fair trial. *Id.* The Student's only allegation of prejudice was this cryptic paragraph: "Because of the nature of this on-going [sic] controversial investigation and the fact that the Respondent party is conducting the investigation and the involvement of respective professional offices in Boone County Court, Petitioner prays for a change of venue." *Record* at 36. The mere suggestion of "involvement of the professional offices in Boone County Court" is insufficient to warrant a change of venue. The Student did not make the requisite showing that the Student was unlikely to receive a fair trial on account of local prejudice or bias regarding a party or the claim or defense presented by a party. T.R. 76(A).[7]

6. The Student also argues that any waiver of the teacher's presence would have to be in writing. In support of this argument the Student cites IC 20–8.1–5.1–21: "Any rights granted to a student or a student's parent *by this chapter* may be waived only by a written instrument signed by both the student and the student's parent." (Emphasis added.) The code section applies only to rights granted in

the statute. The teacher's presence at the parent conference was not a statutory right, so no written waiver was required.

7. The Student made no specific allegations until filing the Reply Brief, which stated that "the Boone County charitable foundation ... has a relationship with Judge Detamore's Superior Court II which runs programs that

## V. Factual Issues

The Student argues that "if the School rule is found valid, there are significant factual disputes" barring summary judgment.[8] *Appellant's Brief* at 8. This argument inverts the analytical process for summary judgment. To grant summary judgment, the trial court (and this court) must first identify the facts that are material to the lawsuit. Next, the court determines whether there are any genuine issues as to those facts. If there are no material factual issues, the court must then decide whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C).

In this dispute, the material facts involve the existence of the school tardiness policy, the parties' adherence to the policy, and the procedural protections the Student received. Like the trial court, this court finds that there are no genuine issues regarding these facts. Having so found, we conclude that the school rule is valid and that the school followed adequate procedures in implementing the rule. We decline the Student's invitation to revisit the facts after making these conclusions.[9]

## VI. Student Discipline Act

The Student contends that the judicial review section of the Student Discipline Act is unconstitutional. The judicial review section reads:

"Judicial review of a governing body's action under this chapter by the circuit or superior court of the county in which a student who is the subject of the governing body's action resides *is limited to the issue of whether the governing body acted without following the procedure required under this chapter.*"

IC 20–8.1–5.1–15 (emphasis added). According to the Student, the underlined portion is unconstitutional because it prevents courts from considering whether a school's conduct is arbitrary and capricious. The Student cites no authority for this position, and we have found none. We note that the judicial review section does not (and cannot) deprive courts of the duty to determine whether a school's action deprives a student of constitutionally protected rights. *See Branan v. State,* 161 Ind.App. 443, 445, 316 N.E.2d 406, 409 (1974), *trans. denied* ("Fundamental constitutional guarantees are absolute and outside the discretion of any court to ignore or deny"). The preceding portions of this opinion addressed those constitutional issues. There are no remaining constitutional issues to address. As such, we reject the Student's argument regarding the judicial review section.

Affirmed.

DARDEN, J., and BROOK, J., concur.

---

receives [sic] grants from this Boone County charitable foundation." *Reply Brief* at 14. Even if this allegation had been presented to the trial court, the court would have been within its discretion to deny the venue change. The alleged links between the foundation and the court are too tenuous and too remote to require a change of venue.

8. The Student also states that the affidavits submitted by the school are deficient for lack of personal knowledge. The Student's accompanying argument, however, demonstrates that the Student is actually challenging the relevancy and veracity of the affidavits rather than the personal knowledge of the affiants.

9. We acknowledge that the trial court mistakenly categorized the Student's special education hearing as a hearing on the tardiness issue. This miscategorization is not grounds for reversal, because the Record indicates that the Student received a school board hearing on the tardiness issue. *Record* at 17.