**POZZO TRUCK CENTER, INC.,**
Appellant–Plaintiff,

v.

**CROWN BEDS, INC., & Kathy Foster,**
Appellees–Defendants.

No. 45A04–0402–CV–115.

Court of Appeals of Indiana.

Oct. 29, 2004.

Edward R. Hall, Merrillville, IN, Attorney for Appellant.

## OPINION

MATHIAS, Judge.

Pozzo Truck Center, Inc. ("Pozzo") filed a complaint alleging breach of contract against Crown Beds, Inc. and Kathy Foster ("Crown") in Lake Superior Court, Small Claims Division. The case was dismissed for lack of personal jurisdiction. Pozzo appeals arguing that the trial court erred when it determined that Crown did not have sufficient minimum contacts to establish jurisdiction in Indiana courts. Concluding that the trial court erred in its determination, we reverse.

## Facts and Procedural History

Pozzo, located in Gary, Indiana sells and services new Mack trucks. Pozzo had an Indiana customer interested in a certain model of Mack truck, which Pozzo did not have in its inventory. Pozzo conducted a search of other Mack truck dealers and found a suitable truck located at Southwest Missouri Truck Center ("Southwest"). However, Pozzo's customer wanted certain modifications made to the bed of the truck. Southwest hired the appellee, Crown, located in West Plains, Missouri, to perform the work. Later, it was determined that Pozzo's customer wanted additional work performed on the truck's axles. On August 13, 2002, Pozzo delivered its own purchase order for the axle work to Crown, who performed the work. Pozzo alleges that upon returning the truck to Indiana it discovered that Crown's axle work was defective.

On July 18, 2003, Pozzo filed a complaint against Crown in the Lake Superior Court, Small Claims Division, alleging breach of contract. On September 22, 2003, Crown submitted a letter to the court, which the court treated as a motion to dismiss for lack of personal jurisdiction. On October 21, 2003, the court held a hearing on Crown's motion to dismiss. At that hearing, Pozzo asserted that Indiana had personal jurisdiction over Crown because 1) there is a basis for jurisdiction under Indiana's long arm statute, and 2) Crown

exceeds the minimum contacts threshold under *International Shoe v. Washington.* In an order dated October 24, 2003, the trial court granted Crown's motion to dismiss. Pozzo now appeals.

### Standard of Review

■ We initially note that Crown has not filed an appellee's brief in this case. Where the appellee fails to file a brief on appeal, we may in our discretion reverse the trial court's decision if the appellant makes a prima facie showing of reversible error. *See McGill v. McGill,* 801 N.E.2d 1249, 1252 (Ind.Ct.App.2004). This rule relieves us of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. *Id.*

■ Personal jurisdiction is a court's power to bring a person into its adjudicative process and render a valid judgment over that person. *See Saler v. Irick,* 800 N.E.2d 960, 965 (Ind.Ct.App.2003) (quoting Black's Law Dictionary 857 (7th ed. 1999)). "The existence of personal jurisdiction over a defendant is a constitutional requirement in rendering a valid judgment, mandated by the Due Process Clause of the Fourteenth Amendment." *Id.* Our court employs a de novo standard of review "when reviewing questions of whether personal jurisdiction exists." *Id.*

### Discussion and Decision

■ Determination of specific personal jurisdiction requires a two-step analysis:[1] 1) whether there is a basis for jurisdiction under Indiana Trial Rule 4.4(A), and 2) whether asserting jurisdiction violates the Due Process Clause of the Fourteenth Amendment.

■ First, we must determine if Crown's contacts with Indiana fall under Indiana Trial Rule 4.4(A)(4), which provides in part:

> Any person or organization that is a nonresident of this state ... submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent: (4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state.

Ind. Trial Rule 4.4(A)(4) (2004). Trial Rule 4.4(A) is an enumerated act long-arm statute and therefore directs the court to assert jurisdiction over parties who commit any act listed in the statute.[2] *Anthem*

---

**1.** Pozzo does not claim that Crown is subject to the general jurisdiction of Indiana courts by reason of any ongoing activities in our state. Rather, Pozzo relies on the concept of specific jurisdiction in arguing that Indiana courts have personal jurisdiction over Crown regarding the transaction at issue.

**2.** In 2003, Trial Rule 4.4(A) was amended to include the following language: "In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Ind. T.R. 4.4(A). In *Litmer v. PDQUSA.com,* 326 F.Supp.2d 952, 955 (N.D.Ind.2004), the United States District Court for the Northern District of Indiana reasoned that the 2003 amendment to Trial Rule 4.4(A) makes Indiana's long-arm statute coextensive with the limits of due process, allowing the courts to collapse the two-prong analysis into a single inquiry: whether the exercise of jurisdiction comports with due process. *See id.* However, we note that if Indiana's long-arm statute was intended to be coextensive with the limits of personal jurisdiction under the Due Process Clause, the enumerated acts listed in Rule 4.4(A) could have been deleted and the Rule could have been rewritten with general language, like the "any constitutional basis" statutes used in several other states. *See Anthem,* 730 N.E.2d at 1232. We therefore will continue to apply the analysis established in *Anthem,* first determining whether the conduct falls under the long-arm statute and then whether it comports with the Due Process Clause as interpreted by the United States

*Ins. Co., Inc. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1232 (Ind.2000). After finding a basis for jurisdiction under Trial Rule 4.4(A)(4), we must next examine whether asserting jurisdiction violates the Due Process Clause of the Fourteenth Amendment. In doing so, we must determine 1) whether there are minimum contacts between Crown and Indiana, and 2) whether asserting personal jurisdiction over Crown offends "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "[T]he fairness inquiry is separate from the contacts question and may be used to defeat jurisdiction even if the defendant has sufficient contacts with the forum state." *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 121–22, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

Contacts are acts performed in the forum state or acts performed outside the forum state that have an effect within the forum state. *See Anthem,* 730 N.E.2d at 1235. To determine whether minimum contacts exist, the court must examine the quality and nature of the contacts with the forum state and determine if they are related to the basis of the lawsuit and the result of deliberate conduct by the appellee. *See Fetner v. Maury Boyd & Assocs., Inc.,* 563 N.E.2d 1334, 1337 (Ind.Ct.App. 1990), *trans. denied.* "After the plaintiff establishes that there are minimum contacts, the defendant then carries the burden of proving that asserting jurisdiction is unfair and unreasonable." *Anthem,* 730 N.E.2d at 1237 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

"Things to consider when evaluating the defendant's contacts with the forum state are: (1) whether the claim arises from the defendant's forum contacts, (2) the overall contacts of the defendant or its agent with the forum state, (3) the foreseeability of being haled into court in that state, (4) who initiated the contacts, and (5) whether the defendant expected or encouraged contacts with the state." *Anthem,* 730 N.E.2d at 1236. "A single contact with a forum state may be enough to establish specific personal jurisdiction; however, the defendant's conduct must create a substantial connection with the forum state and the acts must be purposeful, not a random, fortuitous or attenuated contact." *Richards & O'Neil, LLP v. Conk,* 774 N.E.2d 540, 546 (Ind.Ct.App. 2002).

In support of its argument that Crown had sufficient minimum contacts with Indiana, Pozzo directs our attention to *North Texas Steel Co., Inc. v. R.R. Donnelley & Sons Co.,* 679 N.E.2d 513 (Ind.Ct. App.1997), *trans. denied.* In that case, a Texas corporation was hired by a New Jersey corporation[3] to manufacture storage racks for use by an Indiana corporation at its Warsaw, Indiana facility. When the racks collapsed, causing severe damage, the Indiana corporation filed suit in Indiana. On appeal, our court found that minimum contacts existed because the Texas corporation specifically manufactured the racks for an Indiana corporation and then shipped the system to the Indiana corporation. *Id.* at 519. Additionally, we observed that the appellant's acts of manufacturing and shipping were done with the knowledge that the racks

Supreme Court and courts in this state. *See id.*

**3.** We also note that the Indiana corporation hired an Illinois corporation, which subcon-

tracted the rack design and manufacture to the New Jersey corporation. *North Texas Steel,* 679 N.E.2d at 519.

were for use by the Indiana corporation. *Id.*

Similar to the facts presented in *North Texas Steel*, in the present case, Crown performed the axle work at issue on the Mack truck specifically for Pozzo, an Indiana corporation. As the purchase order and invoice indicate, Crown had full knowledge that Pozzo was an Indiana corporation. In sum, Crown's contacts are such that it should have reasonably anticipated being haled into an Indiana court to adjudicate a dispute over the work it performed for Pozzo.[4] Accordingly, we find that Crown established minimum contacts with the state of Indiana.

Finally, we now consider the following factors to determine whether asserting personal jurisdiction over Crown offends traditional notions of fair play and substantial justice: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of individual states in furthering fundamental substantive social policies. *See North Texas Steel*, 679 N.E.2d at 519 (quoting *Asahi*, 480 U.S. at 113–15, 107 S.Ct. 1026). These interests must be balanced and weighed to make certain that asserting jurisdiction is fair in a particular case. *See Asahi*, 480 U.S. at 121–22, 107 S.Ct. 1026.

While the burden that Crown faces in defending itself in an Indiana court is heavier than the burden of defending against a suit filed in Missouri, that factor alone is not sufficient to defeat the existence of jurisdiction. *See North Texas Steel*, 679 N.E.2d at 519. Further,

Crown's inconvenience is outweighed by Pozzo's interest in adjudicating the dispute in the forum where the damage was realized and Indiana's interest in protecting its business owners from defective services. There do not appear to be more witnesses in Missouri than Indiana and it is not clear that there will be greater travel expenses or inconvenience for those involved in the litigation if the suit is tried in Indiana. Finally, it does not appear that any substantive social policies will be affected by the outcome of this controversy. For all these reasons, we find that asserting jurisdiction over Crown in Indiana comports with traditional notions of fair play and substantial justice.

### Conclusion

The trial court erred by granting Crown's motion to dismiss for lack of jurisdiction.

Reversed.

BARNES, J., concurs.

CRONE, J., dissents with separate opinion.

CRONE, Judge, dissenting.

In my view, the record before us establishes that even if Crown's contacts with Indiana fall under the long-arm provisions of Trial Rule 4.4(A), the assertion of personal jurisdiction in this case offends due process. Accordingly, I respectfully dissent.

For analytical purposes, it is worth considering several important facts overlooked by the majority. First, the record indicates that after installing a dump bed on the truck for Southwest, Crown delivered the truck to Southwest's facility in Springfield, Missouri. Only then did

---

**4.** We acknowledge Judge Crone's position in his dissent. Had there been no direct contact between Pozzo and Crown concerning the axle work at issue, we would affirm the trial court.

Southwest inform Crown that it would be transferring the truck to Pozzo and ask Crown to install axles on the truck per Pozzo's request and at Pozzo's expense. Crown then returned the truck to its facility. Pozzo issued a purchase order, Crown installed the axles, and then Pozzo retrieved the truck from Missouri. Crown billed Pozzo $9,000 for the installation, which Pozzo paid in full.[5]

It is evident to me that Pozzo "purposely availed itself" of the privilege of doing business with Crown in Missouri, rather than the other way around. Pozzo contacted Southwest about acquiring a truck from its Missouri facility, asked Southwest to install a dump bed, asked Southwest to ask Crown to install the appropriate axles, sent Crown a purchase order, retrieved the truck from Crown's Missouri facility, and then paid Crown's invoice. I believe that unlike the appellant in *North Texas Steel*, Crown was a "local" company that "happened" to expand its business into Indiana in this isolated instance. *Cf. North Texas Steel*, 679 N.E.2d at 519. Granted, it may have been foreseeable that any defects in Crown's axle installation would become apparent only after the truck was delivered to Pozzo's customer in Indiana, but " 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). As the Supreme Court has observed, were foreseeability the sole criterion, "[e]very seller of chattels would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel." *Id.* at 296, 100 S.Ct. 559. The same may be said for those who perform services on chattels, such as Crown in this case.

Under these circumstances, I cannot conclude that Crown should have reasonably anticipated being haled into court in Indiana. For these reasons, I would affirm the trial court's dismissal of Pozzo's complaint for lack of personal jurisdiction.

---

**5.** Contrary to Pozzo's assertion in its appellate brief, its complaint does not "allege[ ] that Crown had improperly installed the axles on an over the road truck prior to the truck being sold by Pozzo to a customer." Appellant's Br. at 2. Rather, Pozzo's complaint alleges that Crown had "purchased goods and/or services from [Pozzo] totaling more than One Thousand Fourteen dollars and [had] wholly refused to pay for said goods and/or services, despite repeated demands by [Pozzo]." Appellant's App. at 46. The record suggests that the truck's owner allegedly experienced problems with the tires rubbing, and that Pozzo performed repairs on the truck for which it billed Crown. As was the trial court, I am "somewhat troubled" by Pozzo's misleading allegation in its complaint, not to mention its misleading assertion in its brief. *See id.* at 4 ("The Court is somewhat troubled that while the complaint speaks in terms of parts purchased by [Crown] from [Pozzo] without payment being tendered, the parties had agreed in open court that the facts are as indicated above. The Court determines that, reading the complaint exceedingly liberally, its intent is to recoup expenses for parts and repairs that were necessary due to the work done by [Crown]. The Court would strongly caution [Pozzo] that this issue was a close one, which could very well have lead to outright dismissal."). It is worth noting that Crown did not install the tires on the truck.