

Gil I. Berry, Jr., Buck, Berry, Landau & Breunig, Indianapolis, for Appellant–Plaintiff.

Nicholas C. Pappas, Sandra Boyd Williams, Locke, Reynolds, Boyd & Weisell, Indianapolis, for Appellees–Defendants.

**Joyce S. ROSS, Appellant–Plaintiff,**

v.

**Raminder CHEEMA and Pillow Express Delivery Service, Inc., Appellees– Defendants.**

No. 49A04–9707–CV–302.

Court of Appeals of Indiana.

June 29, 1998.

### OPINION

KIRSCH, Judge.

Joyce S. Ross appeals the grant of summary judgment in favor of Raminder Cheema and Pillow Express Delivery Service, Inc. in her action for negligent infliction of emotional distress and raises the following issue: Whether repeated, loud pounding upon the door to plaintiff's home can constitute a sufficient impact to give rise to a claim for negligent infliction of emotional distress under the standard set out by our Supreme Court in *Shuamber v. Henderson.*[1]

We reverse.

### FACTS AND PROCEDURAL HISTORY

On the evening of December 6, 1995, Ross was in her living room when the doorbell rang. Ross was recuperating from shoulder

---

1. 579 N.E.2d 452 (Ind.1991).

surgery and had a "cooling unit" attached to her shoulder. Before she could answer the door, there was a "tremendous pounding" on the door. *Record* at 44. She heard the locked screen door pop open, then the door knob on the inner door began to twist back and forth, then by more pounding on the door.

Ross went to a window and saw a car which she did not recognize. Fearful of an intruder, Ross placed a steak knife in her pants for protection before returning to the door. Ross opened the front door and a man reached in and put a clipboard in front of her face and told her to "sign." *Record* at 45. When she asked why she was to sign, the man said, "I have a letter for you. Sign here." *Record* at 45. Ross signed and then saw that her screen door lock was broken and the main door knob was very loose, hanging by only two screws. *Record* at 45.

Ross claimed that as a result of the incident she suffered mental injury which required medical treatment. She brought an action against the deliveryman, Cheema, and his employer, Pillow Express for negligent infliction of emotional distress. Pillow Express and Cheema moved for summary judgment claiming that the Indiana impact rule barred Ross's recovery. The trial court granted the motion, and this appeal ensued.

## DISCUSSION AND DECISION

When reviewing a decision on a summary judgment motion, this court applies the same standard as the trial court. *Wickey v. Sparks*, 642 N.E.2d 262, 265 (Ind.Ct.App. 1994), *trans. denied* (1995). Summary judgment shall be granted if the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Wickey*, 642 N.E.2d at 265. All facts and reasonable inferences must be construed against the moving party. *Sizemore v. Arnold*, 647 N.E.2d 697, 699 (Ind.Ct.App.1995). We will affirm a summary judgment ruling on any legal theory which is consistent with

the designated evidence in the record. *Crist v. K–Mart Corp.*, 653 N.E.2d 140, 142 (Ind. Ct.App.1995), *trans. denied* (1996).

Ross contends that she should be allowed to maintain her action for negligent infliction of emotional distress[2] without regard to whether the emotional trauma was accompanied by any physical injury, because the emotional distress was a "foreseeable consequence" of Cheema's actions. In response, the defendants contend that Ross does not meet the requirements of the modified impact rule under *Shuamber v. Henderson* and that Ross' alleged distress is not reasonable and does not satisfy the reasonableness test in *Shuamber*.

Before *Shuamber*, the Indiana impact rule provided that the only emotional trauma compensable under a negligence theory was that arising out of a plaintiff's own injuries. *Boston v. Chesapeake*, 223 Ind. 425, 428–9, 61 N.E.2d 326, 327 (Ind.1945). In *Shuamber*, the plaintiff was a mother, driving in her car with two of her children when it was hit by the defendant. She watched as her son died in front of her. The court modified the impact rule, reasoning that, in such circumstances where the plaintiff has been directly impacted, she need not also suffer physical injuries to recover. The Supreme Court removed contemporaneous physical injury accompanying the impact as a requirement to sustain an action for negligent infliction of emotional distress, stating:

> "when a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, we hold that such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff."

*Shuamber*, 579 N.E.2d at 456.

The court reviewed and rejected the traditional reasons for requiring a physical injury

---

2. Since the motion for summary judgment was directed only to Ross's claim for negligent infliction of emotional distress, we do not reach any claims by Ross regarding intentional infliction of emotional distress.

to plaintiff before recovery was allowed: (1) fear that a flood of litigation will result if claims of this nature are allowed; (2) concern that fraudulent claims will be made; and (3) difficulties in proving a causal connection between the negligent conduct and the emotional distress. The court found that the plaintiff was in close proximity to the event giving rise to her emotional trauma and extremely close proximity to the defendant. She and her daughter who was also in the car were the only two persons in a position to recover. Finally, there was little difficulty in determining that the plaintiff's emotional trauma occurred as a result of seeing her son die within arm's reach. Thus, none of the traditional concerns underlying the impact rule were applicable to the case. In regard to the requisite impact, the court found that "Gail Schuamber was directly involved in the impact because she was inside the vehicle when it was struck by Henderson's automobile. Thus, she sustained an impact." 579 N.E.2d at 456.[3]

*Shuamber* requires "direct impact" and "direct involvement." Ross satisfies both conditions. She was in her home, sitting in her living room when Cheema broke her screen door and began pounding on the main door, twisting the handle so vigorously that it was left hanging by two screws. We see no meaningful distinction between a violent impact with an automobile in which one is riding and one with the home in which one is sitting. In both instances, resulting emotional trauma should be readily foreseen.

In addition to the "direct impact" and "direct involvement," *Shuamber* imposes a rea-

sonableness requirement. Cheema contends that Ross cannot satisfy this requirement because it was unreasonable for Ross to suffer emotional trauma based on his actions. However, reasonableness is a question of fact for the jury. It is uncontested that Cheema was so vigorous in his attempt to deliver the letter that he: (1) broke Ross's screen door; (2) left the main door knob hanging by two screws; and (3) continually and powerfully pounded on her door. From such facts, a jury could conclude that Ross, fearful that her home was being broken into, could reasonably experience emotional trauma and that Cheema should have foreseen such trauma.

We conclude that there are genuine issues of material fact about whether the circumstances of this case constitute a direct impact within the Indiana impact rule and whether Ross's emotional trauma was the reasonable result of such impact. These are both questions of fact to be determined by a jury, not by courts as a matters of law.

We express no opinion as to whether Ross will be successful in proving the elements of her case, but, as in *Shuamber*, we simply hold that a jury should be allowed to make a determination as to whether her evidence is substantial enough to prove her claim. In this case, that means allowing her the chance to prove that her mental trauma is a result of defendant's attempts to gain entry into her home. A jury will be capable of evaluating whether Ross has proved the elements of her claim for emotional damages. "[T]he experience in this state is that juries are equally qualified to judge someone's emotional injury

---

**3.** At the time *Shuamber* was decided only two states other than Indiana required that a plaintiff's emotional trauma arise out of her physical injury, and that only three states required any impact at all. *Shuamber*, 579 N.E.2d at 455, n. 1. The majority of states have switched from an impact rule to a "zone of danger" test, finding that the determination is, for the most part, a matter of degree and that the requirement of an impact can be artificial and capricious. *See*, e.g., *Williams v. Baker*, 572 A.2d 1062 (D.C.1990), where the court stated:

"We are fortified in our decision to forego the requirement of an impact by the conviction that the connection between mere physical impact and mental injury is tenuous. While the theory behind the impact rule is that the occur-

rence of a contemporaneous physical impact guarantees the genuineness of the mental distress, a number of jurisdictions have allowed recovery for mental injury as long as there was any physical impact, no matter how insignificant. As Justice Roberts of Pennsylvania stated in *Niederman v. Brodsky*, 'It appears completely inconsistent to argue that the medical profession is absolutely unable to establish a causal connection in the case where there is no impact at all, but that the slightest impact.... suddenly bestows upon our medical colleagues the knowledge and facility to diagnose the causal connection between emotional states and physical injuries.' "

572 A.2d at 1067 (quoting *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84, 87 (1970)).

as they are to judge someone's pain and suffering, and the presence or absence of some physical injury does nothing to alleviate the jury's burden in deciding whether the elements of mental suffering are present." *Id.* at 455.

Reversed.

SULLIVAN, J., concurs with separate opinion.

FRIEDLANDER, J., dissents with separate opinion.

SULLIVAN, Judge, concurring.

In my view, the underlying facts of *Shuamber v. Henderson*, (1991) Ind., 579 N.E.2d 452, would have justified recovery for emotional distress under the pre-existing physical impact rule and without modifying the test. In that case, the automobile collision constituted a physical impact sufficient to cause plaintiff's own physical injuries in addition to the emotional distress occasioned by her son's death in the crash. I can only presume, therefore, that it was the intention of the court to "modify" the rule for future cases. In this sense, in stating that "[w]hen, as here" the plaintiff sustains a "direct impact"/ "direct involvement" (579 N.E.2d at 456), the court was merely restating the pre-existing rule as to impact, but in dictum pronounced that in the future the emotional distress need not be accompanied by physical injury to the plaintiff. I find no case, subsequent to *Shuamber, supra*, which has allowed recovery for emotional distress without a pre-*Shuamber* physical impact or an accompanying physical injury. Compare *Holloway v. Bob Evans Farms, Inc.*, (1998) Ind.App., 695 N.E.2d 991 (eating one-half of a meal containing a worm was clearly direct impact with "wormy food" although the worm itself was not consumed), *Dollar Inn, Inc. v. Slone*, (1998) Ind.App., 695 N.E.2d 185 (plaintiff stabbed in thumb by hypodermic needle concealed in center tube of roll of toilet paper was clearly a direct impact), and *J.L. v. Mortell* (1994) Ind.App., 633 N.E.2d 300, *trans. denied* (inappropriate vaginal massage by physical therapist causing emotional distress was clearly a direct impact) with *Gorman v. I & M Electric Co., Inc.* (1994) Ind.

App., 641 N.E.2d 1288, *trans. denied* (recovery for emotional distress denied because plaintiff did not suffer an impact when she escaped a negligently-caused fire to her house, but suffered emotional distress mistakenly thinking her child was still in the house.)

Although the impact rule has been not been "modified" into extinction, the continued presence of the "direct impact"/ "direct involvement" requirement makes it necessary, in future cases not involving a claim for physical injury accompanied by emotional distress, to force square-peg facts into the round-hole physical impact test.

I acknowledge that a "modified" impact test may be viewed as a way to retain a degree of restraint upon remote or speculative emotional stress claims. However, I subscribe to the wisdom and validity of the approach reflected in footnote 3 of the majority opinion herein. In this light and in light of the "modified" test, I therefore concur in reversal of the summary judgment which was entered in favor of the defendants.

FRIEDLANDER, Judge, dissenting.

I believe summary judgment was appropriate and therefore respectfully dissent.

The parties agree that the question upon which this case turns is whether Ross suffered a "direct impact" within the meaning of Indiana's modified impact rule, as set forth in *Shuamber v. Henderson*, 579 N.E.2d 452 (Ind.1991). The reversal of summary judgment in the instant case means that the jury is entitled to decide that the touching of a house in which a person is located is a direct impact within the meaning of *Shuamber*, even if the person does not feel the touching, but merely sees and hears it. The majority today decides that the law would countenance such a result. I believe this decision effects an unwarranted expansion of the modified impact rule announced in *Shuamber*.

Prior to *Shuamber*, Indiana law recognized the impact rule, under which a person could recover damages for emotional distress only if the emotional distress arose out of a physical injury. In *Shuamber*, the supreme court

modified that rule to the effect that a person could recover for emotional distress even if he did not suffer a physical injury, so long as the emotional distress was suffered as a result of a direct impact. The court concluded in that case that the plaintiff was entitled to recover because the car that the plaintiff was driving was struck by another vehicle. The impact with the plaintiff's car was severe enough to have killed the plaintiff's son, who was a passenger in the car. It is in the context of those facts that we are to interpret the meaning of "direct impact".

*Webster's Third International Dictionary* 640 (1976) defines "direct" as "effected by one subject or substance in contact with another with no insulating or obstructing element between". The key concept that characterizes "direct" in this context is embodied in the phrase "in contact with". The *Shuamber* plaintiff was in contact with the car which was struck by the defendant's vehicle. Therefore, the impact in *Shuamber* was "direct" enough to have physically jostled the plaintiff, at the very least. Indeed, one may well imagine that the effect of the impact in question upon the plaintiff's body was considerably more than a jostling.

Contrast this with the effect of the offending conduct upon the plaintiff's body in the instant case. Ross heard and observed the offending conduct, but could not feel it. She was not in contact with the door when it was struck. To justify imposition of the rule by saying that she was in contact with the *house*—by standing on its floor—is to stretch the point too far. The blows to the door and door handle did not reverberate to or visit physical consequences upon Ross's body that she could feel. The question thus becomes, does hearing and observing, but not feeling, an act constitute a "direct impact" within the meaning of *Shuamber?* In my view, it does not.

*Shuamber* did not alter the "impact" component of the impact rule. *See Gorman v. I & M Elec. Co., Inc.,* 641 N.E.2d 1288 (Ind.Ct. App.1994), *trans. denied.* Rather, it abolished the requirement that the source of compensable emotional distress must be a physical injury to the plaintiff. However, the requirement of an impact upon the plaintiff survived unaltered by the modification of the rule. *Id.* As I read the cases both before and after *Shuamber,* and including *Shuamber,* it is clear to me that the impact must be, in relation to the plaintiff, both direct and physical. *See, e.g., Gorman v. I & M Elec. Co., Inc.,* 641 N.E.2d 1288.

In this regard, I note that the supreme court held that Schuamber satisfied the first element because the plaintiff there sustained a *"physical* impact", 579 N.E.2d at 454 (emphasis supplied). Surely, "physical impact" in this context cannot be interpreted so broadly as to include within its meaning the touching of a building in which the plaintiff is situated, when neither the plaintiff nor any other person feels any physical effects as a result of the touching. Rather, there must be a direct nexus between the defendant's act and the plaintiff's body that goes beyond the plaintiff merely seeing or hearing an impact that is otherwise physically unconnected to the plaintiff. In my view, the "direct impact" required by the modified impact rule must be such as to produce an effect upon the plaintiff's body that the plaintiff is capable of detecting other than through the senses of vision, hearing or smelling.

In summary, I believe that knocking, however loudly, upon a door of a house occupied by a person who cannot feel the blows is not a "direct impact" within the meaning of Indiana's modified impact rule. The majority's holding is an extension of the modified impact rule announced in *Shuamber* that is not supported, or even suggested, by the text of that opinion. I would affirm the grant of summary judgment.